DEPARTMENT OF NATURAL RESOURCES v FROSTMAN

Docket No. 77-1731. Submitted May 3, 1978, at Marquette.—Decided July 5, 1978. Leave to appeal applied for.

James Frostman was found to have fished in the Michigan waters of Lake Superior without a license. After a hearing, an order was entered for confiscation by the Department of Natural Resources of all of the equipment used by the defendant, Gogebic Circuit Court, Donald L. Munro, J. Defendant appeals. *Held:*

1. Admission of the testimony of the DNR's expert witnesses was erroneous because of the lack of qualifications of the witnesses and the inaccuracy of the instruments used to establish the defendant's position on Lake Superior. The sum of the plaintiff's methods of placing the defendant in Michigan waters lacked substance and credibility.

2. There is no denial of equal protection in the statutory distinction between mandatory confiscation of the property when the value exceeds $300 and discretionary confiscation when the value is equal to or less than $300.

Reversed.

1. EVIDENCE—WITNESSES—EXPERT WITNESSES—ADMISSION OF EXPERT TESTIMONY—CIRCUMSTANCES.

Expert testimony may be admitted under the following circumstances: (1) there must be an expert, (2) there must be facts in evidence which require or are subject to examination and analysis by an expert, and (3) there must be knowledge in the particular area which belongs more to an expert than to a lay person.

2. WITNESSES—EXPERT WITNESSES—EVIDENCE—DISCRETION OF TRIAL COURT.

Discretion exists in the trial court to receive or reject the opinions of expert witnesses.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 31 Am Jur 2d, Expert and Opinion Evidence §§ 1, 2.

[2] 31 Am Jur 2d, Expert and Opinion Evidence § 3.

[3] 31 Am Jur 2d, Evidence § 604.

[4] 31 Am Jur 2d, Evidence §§ 26–32.

[5] 35 Am Jur 2d, Fish and Game § 54.

3. Evidence—Witnesses—Opinion Testimony—Facts—Expert Witnesses.

Ordinarily, a witness is restricted to the facts, and opinion evidence is inadmissible; a witness is entitled to express an opinion or conclusion where that opinion is dependent on professional or scientific knowledge or skill.

4. Evidence—Witnesses—Scientific Apparatus—Qualifications of Operator—Expert Witnesses.

Testimony as to the reliability of scientific apparatus and the qualifications of the operator of such apparatus is a *sine qua non* to the admission of expert opinion evidence.

5. Constitutional Law—Equal Protection—Game and Fish Laws—Confiscation of Property.

No denial of equal protection exists in the distinction in the game and fish enforcement statutes between mandatory confiscation of property when the value exceeds $300 and discretionary confiscation when the value is equal to or less than $300 (MCL 300.13, 300.14; MSA 13.1223, 13.1224).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Anders B. Tingstad,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, by *Keith D. Roberts,* Assistant Attorney General), for plaintiff.

*Green, Renner, Weisse, Rettig, Rademacher & Clark,* for defendant.

Before: V. J. Brennan, P. J., and R. B. Burns and M. J. Kelly, JJ.

V. J. Brennan, P. J. Defendant James Frostman was found to have fished in the Michigan waters of Lake Superior without a license in violation of MCL 308.22; MSA 13.1513. After a hearing was held on March 9–10, 1977, Gogebic County Circuit Judge Donald L. Munro entered an order on April 28, 1977, confiscating all of the equipment used by defendant under the authority of MCL 300.14; MSA 13.1224. Defendant appeals this order as of

right. GCR 1963, 806.1. Defendant raises several allegations of error. We will address those which merit discussion.

We must determine at the outset whether, if the trial court abused its discretion in admitting expert testimony of witnesses not duly qualified as experts, sufficient competent evidence exists to support its finding that defendant's fishing nets were located within Michigan waters.

Admission of expert witness testimony depends upon requirements established by the Michigan Supreme Court and followed by this Court. *O'Dowd v Linehan,* 385 Mich 491, 509–510; 189 NW2d 333 (1971). See also *Johnson v Detroit,* 79 Mich App 295, 300–301; 261 NW2d 295 (1977). *O'Dowd* established that expert testimony may be admitted under the following circumstances: (1) there must be an expert, (2) there must be facts and evidence requiring or subject to examination and analysis by an expert, and (3) there must be knowledge in the particular area that belongs more to an expert than to a lay person.

Discretion exists in the trial court to receive or reject the opinion of experts. *Siirila v Barrios,* 398 Mich 576, 591; 248 NW2d 171 (1976), *Moore v Lederle Laboratories,* 392 Mich 289, 295–296; 220 NW2d 400 (1974), *People v Zimmerman,* 385 Mich 417, 426; 189 NW2d 259 (1971). Ordinarily, a witness is restricted to the facts, and opinion evidence is inadmissible. A witness is entitled to express an opinion, or conclusion, where that opinion is dependent on professional or scientific knowledge or skill. *Dudek v Popp,* 373 Mich 300, 305–306; 129 NW2d 393 (1964).

The principal question here is whether the witnesses offered by plaintiff qualified as experts.

Plaintiff contends that even if these two wit-

nesses, Dabb and Scorfar, were not qualified to give expert opinion, their lack of qualifications affects the weight, not the sufficiency, of the evidence. Testimony as to the reliability of scientific apparatus, and the qualifications of the operator of such apparatus, is a *sine qua non* to the admission of expert opinion evidence. *People v Krulikowski,* 60 Mich App 28, 32; 230 NW2d 290 (1975).

We find the testimony of these witnesses was erroneously admitted. Record evidence appears as to the inaccuracy of the instruments used in making the necessary measurements. Testimony was also provided as to the internal inconsistencies of the measurements taken by these instruments. Both witnesses were unable to answer simple questions regarding the definition of basic navigational terms. Each witness testified that his training had been rudimentary at best. The problem with the measurements taken by these witnesses is even recognized by the trial court in its decision. On the basis of this record, we do not find the proper basis was laid for admission of this testimony.

Further, even were we to find the Department of Natural Resources' witnesses competent to testify as experts, we would find the evidence they presented inadequate to sustain so extreme a penalty. Defendant in this case was liable to lose the very basis of his livelihood. In order to sustain such a penalty, the evidence of measurement presented by department witnesses would need to be much more accurately and scientifically determined than was presented in this case. For instance, though the department represented in its complaint that its measurements were based upon VOR air navigation instrument readings and sonar tests, only testimony relating to compass bearings, depth readings and time-speed calculations was actually admitted at trial.

In fact, the Department of Natural Resources' officers first attempted to compute the position of defendant's nets by measuring the depth of the water. They found a buoy depth of 460 feet near the supposed point of infraction. Charts admitted as evidence indicated depths varying from 438 feet to more than 500 feet in Michigan waters while only 250 to 396 feet in Wisconsin waters. This is mathematically a differential of only 42 feet between the extreme figures on both sides, assuming the accuracy of the charted numbers. Bottom drift might itself make such figures even less reliable. Add to this variable the probability that the anchor line may have drifted or bent in the water current and we find little left to recommend this first system of measurement.

Plaintiff's next approach involved time-speed calculations using fixed land and water points of reference. Compass bearings and fixed speed were employed in this manuever, the validity of which was neither adequately authenticated by verifying plaintiff's individual compass accuracy nor thoroughly substantiating the Department of Natural Resources' motor craft's miles per hour ratio to its revolutions per minute.

The trial court refused to admit evidence of sonar readings, though we would note that such evidence by itself would not verify questions regarding physical position to the state boundary. In short, the sum of plaintiff's methods of placing defendant in Michigan waters lacked substance and credibility. The witnesses' lack of necessary expertise certainly added no luster to the evidentiary presentation.

The court noted that the Department of Natural Resources woefully underequips its officers. This Court's holding today is not intended to indicate a

lax attitude to proven illegal fishing in Michigan waters. What we do intend to do is put the Department of Natural Resources on notice that persons such as defendant may not be successfully prosecuted in our courts where the penalty for violation is seizure without more accurate and substantial support for any poaching charges made.

We thus would recommend use of more reliable equipment like the Loran "C" radio signal system, which inexpensively measures distances by employing time delay in micro-seconds in order to pinpoint objects within 50 feet of true position. No great expertise or experience is required to operate such a device. We would recommend such a system to the Department of Natural Resources. We will require this degree of accuracy before utilizing the extreme kind of penalty prescribed here.

We find these errors sufficient basis upon which to reverse the trial court.

Having reviewed defendant's remaining claims of error, we find them unnecessary to address at this time, except for the comment that no denial of equal protection exists in the statutory distinction between mandatory confiscation of the property when the value exceeds $300 and discretionary confiscation when the value is equal to or less than $300. See *Alexander v Detroit,* 392 Mich 30, 35–36; 219 NW2d 41 (1974).

Reversed.