PEOPLE v DROSSART

Docket No. 46289. Submitted May 14, 1980, at Marquette.—Decided July 23, 1980. Leave to appeal applied for.

Steven Drossart was found guilty of criminal sexual conduct in the third degree, but mentally ill, Delta Circuit Court, Clair J. Hoehn, J. He appeals, alleging that the trial court committed reversible error in permitting introduction of opinion testimony of expert witnesses regarding his mental capacity at the time of the charged offense and that the trial court abuses its discretion in denying his motion for a continuance for the purpose of a further physical examination, thereby violating his right to a court-appointed psychiatric evaluation. *Held:*

1. The trial court did not err in permitting expert testimony regarding the defendant's mental capacity. A witness qualified as an expert on the subject of insanity may state his opinion of a person's mental condition upon the basis of observation, a hypothetical question, or the testimony of other witnesses, and, once given the appropriate legal standard by the examining attorney or trial judge, may apply his findings and conclusions to those standards and opine as to whether the defendant was or was not mentally ill or insane at the time of the charged offense. Such testimony did not invade the province of the trial judge to govern over matters of law, nor that of the jury to draw legal conclusions.

2. The grant or denial of a motion for continuance and further physical evaluation is subject to the discretion of the trial court, and, the defendant having no legitimate reason for requesting the continuance, there was no abuse of discretion in the trial court's denial of defendant's motion.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur 2d, Expert and Opinion Evidence §§ 85-94.
[2] 21 Am Jur 2d, Criminal Law §§ 31-45.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 45, 53.
[5-7] 31 Am Jur 2d, Expert and Opinion Evidence § 69.
[8] 31 Am Jur 2d, Expert and Opinion Evidence §§ 22, 23.
[9] 31 Am Jur 2d, Expert and Opinion Evidence § 69 *et seq.*
[10] 17 Am Jur 2d, Continuance § 3.

1. WITNESSES — EXPERT WITNESSES — LAY WITNESSES — OPINIONS —
   BASIS — DISTINCTIONS — EVIDENCE — ULTIMATE ISSUES OF FACT
   — JURIES — CRIMINAL LAW.
   Expert and lay witnesses may express their opinions of the
   mental condition of an accused during a criminal trial, al-
   though the lay witness must base his opinion on the facts and
   circumstances within his own knowledge, while an expert
   qualified on the subject of insanity may state his opinion of a
   person's mental condition upon the basis of observation, a
   hypothetical question, or the testimony of other witnesses, and
   such evidence is not objectionable merely because it embraces
   an ultimate issue of fact to be decided by the jury.

2. CRIMINAL LAW — INSANITY DEFENSE — MENTAL ILLNESS — LEGAL
   DEFINITIONS.
   The definitions used to describe the concepts of mental illness and
   insanity, at least for purposes of avoiding criminal responsibil-
   ity, must come from the law.

3. CRIMINAL LAW — INSANITY DEFENSE — INSTRUCTIONS TO JURY —
   ULTIMATE ISSUE.
   The trial court has the responsibility to properly charge a jury on
   the elements of an insanity defense when such an issue is
   raised in a criminal trial; however, once instructed on the
   issue, the jury or trier of fact is required to decide the ultimate
   issue of the defendant's sanity at the time of the offense.

4. CRIMINAL LAW — JURY — RESPONSIBILITY — APPLICATION OF LAW
   TO FACTS — SANITY — EXPERT ASSISTANCE.
   The jury has the sole responsibility of applying the given rules of
   law to the facts relating to the defendant's mental condition;
   however, the expert knowledge of psychiatrists and psycholo-
   gists can be of assistance to the jury in arriving at their
   determination.

5. WITNESSES — EXPERT WITNESSES — NATURE OF TESTIMONY —
   LEGAL REQUIREMENTS — LEGAL CONCLUSIONS.
   An expert witness should not be permitted to testify about the
   requirements of law which apply to the particular facts of a
   case or to phrase his opinion in terms of a legal conclusion.

6. WITNESSES — OPINIONS — APPLICABLE LAW — DEFINITION OF
   LEGAL CRITERIA — USE OF LEGAL STANDARD.
   A witness may not give his opinion as to what law is applicable
   in a given case but may testify to the facts relevant to the
   applicable legal principles, and where the legal criteria are
   adequately defined by the questioner or trial court, so as to be

correctly understood by the jury, the witness may properly phrase his opinion in terms of some familiar legal standard.

7. WITNESSES — OPINIONS — STANDARDS FIXED BY LAW — COURTS — JURIES.

No witness, whether expert, nonexpert, or however qualified, is permitted to express an opinion as to whether or not the person or conduct in question measures up to a standard which has been fixed by law, as the court must instruct the jury as to the law, and the jury must draw its own conclusions from the evidence.

8. WITNESSES — OPINIONS — PROVINCE OF THE JURY — INTERPRETATION OF FACTS.

It is error to permit a witness to invade the province of the jury by giving his own opinion or interpretation of a set of facts where a jury is as capable as anyone else of reaching a conclusion on those facts, or the matter is within the scope of a jury's common knowledge.

9. WITNESSES — EXPERT WITNESSES — SUBMISSION TO JURY — CRITERIA.

An expert's opinion can be submitted for a jury's consideration where the expert's particular training and experience in a special field of activity is largely unfamiliar to the jury.

10. CRIMINAL LAW — CONTINUANCE — JUDICIAL DISCRETION.

The grant or denial of a motion for continuance and further physical evaluation of an accused is subject to the discretion of the trial court, and, absent a clear abuse of such discretion, the decision will not be overturned.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Steven L. Pence,* Prosecuting Attorney, (by *Mary C. Smith,* Assistant Attorney General, Prosecuting Attorneys Appellate Service), for the people.

*Davis, Olsen & Vinocur Law Office,* for defendant on appeal.

Before: MACKENZIE, P.J., and BRONSON and ALLEN, JJ.

ALLEN, J. On November 29, 1978, defendant was found guilty by a jury of criminal sexual conduct in the third degree, but mentally ill. MCL 750.520d(1)(a); MSA 28.788(4)(1)(a). He was sentenced to a prison term of 7 to 15 years.

Prior to trial on the charged offense, defendant filed a notice of intent to claim an insanity defense. On the morning of trial, defense counsel moved to prevent the prosecutor from asking any questions of the expert witnesses calling for their opinions of the defendant's sanity or insanity. Defense counsel acknowledged that the experts could "help to determine whether or not there is a thought disorder or whether or not behavior is affected". However, counsel claimed that the experts' testimony would have to cease at that point because their giving an opinion of the defendant's sanity would invade the province of the jury by "requesting the person on the stand to give a legal opinion and also the ultimate issue". The trial judge denied the motion stating that "[t]he Court rule specifically provides for an expert giving an opinion, even though that opinion invades the province of the jury and it goes to the ultimate issues in the case".

During the trial, defendant called as his expert witness a psychiatrist, Dr. Paul Lucas. After describing his examination procedures, Dr. Lucas testified that defendant suffered from a hyperactive condition due to a "minimal degree of brain dysfunction" that was organic in origin. As a result, defendant had a condition of "thought disorder" resulting in impaired judgment and behavior. In addition, defendant's thinking and behavior was described as impulsive and with poor controls which meant that he had "difficulty in controlling his behavior and his responses to stimuli and his thinking". Dr. Lucas testified that one effect of

these conditions was that defendant was "unable to conform to the requirements of the law". Dr. Lucas also testified that the terms "sane" and "insane" are not medical or psychiatric terms.

On cross-examination by the prosecutor, Dr. Lucas testified that defendant could "tell right from wrong" by having the substantial capacity to appreciate the wrongfulness of his conduct. However, defendant did "not necessarily" have the ability to conform his conduct to the requirements of the law. When the witness was asked if he had formed an opinion "as to the defendant's criminal responsibility" on the day of the crime, defense counsel objected on the ground that the prosecutor was asking for an opinion on "a question of law that this gentlemen is not an expert on". The objection was overruled by the trial judge who, after ascertaining that the witness was familiar with the legal definition of "insanity", asked the witness if he had an opinion on whether the defendant was insane on the day of the crime. Dr. Lucas testified that the defendant did suffer from a mental illness or defect and that as a result of this defect, the defendant was insane because he lacked a capacity to conform his conduct to the requirements of the law.

In rebuttal, the prosecution offered the testimony of Dr. Newton Jackson, a clinical psychologist at the state Forensic Center in Ann Arbor. After describing his examination procedures as they related to his court ordered evaluation of the defendant, the witness testified that the defendant did not suffer from thought disorder or mood disturbance, and, thus, in his opinion, was not mentally ill at the time of the alleged offense. When asked if he had an opinion whether defendant knew right from wrong or whether he

"lacked substantial capacity to conform his conduct to the requirements of the law", Dr. Jackson responded:

"[T]he definition of legal insanity, first indicates that the defendant must be mentally ill, to be legally insane. Then as a result of that mental illness, unable to appreciate the wrongfulness of his conduct or unable to conform his conduct to the law. In my opinion, this defendant was not mentally ill at the time of the alleged offense. It is possible that due to intoxication he may not have been aware of the wrongfulness or he may not have been able to control himself, but that is not due to mental illness, and therefore in my opinion, the defendant was not legally insane at the time of the alleged offense."

On cross and redirect examination, Dr. Jackson explained his opinions in detail.

At the close of the trial, the trial judge instructed the jury that they were the sole and exclusive judges of the facts and that it was their duty to determine which witnesses to believe. The jury was told that if the evidence was capable of more than one interpretation, they should accept the one more favorable to defendant. The jury was also charged with determining whether the defendant was sane or insane at the time of the offense. Detailed definitions and the elements of the terms "mental illness" and legal "insanity" were also explained to the jury. In addition, the judge indicated that several factors were important in determining whether defendant was insane at the time of the crime, aside from the testimony of the expert witnesses: the existence of a brain dysfunction, the effect of defendant's living environment, and his actions at the time of the alleged offense. Defense counsel did not object to the jury instructions.

During jury deliberations, the jury requested that the trial court provide them with a definition of the term "mentally ill". This request was fulfilled. The jury returned a verdict of guilty but mentally ill. Defendant appeals as of right.

Defendant claims that the trial court committed reversible error in permitting, over his objection, introduction of the testimony of the expert witnesses relating to their opinions of whether the defendant was mentally ill and insane at the time of the charged offense. Defendant does not contest the qualifications of the witnesses as experts in the field of mental diseases or that they had knowledge and skills peculiar to experts rather than to lay persons. Nor does he dispute that facts relating to defendant's alleged insanity required expert interpretation or analysis. MRE 702, *Dep't of Natural Resources v Frostman,* 84 Mich App 503, 505; 269 NW2d 655 (1978). Rather, defendant argues that, while an expert witness may give his opinion on a matter even though it pertains to an ultimate issue of fact (MRE 704), he may not give his opinion on ultimate conclusions of law.

The reasons given by defendant for objecting to this type of opinion evidence are stated in his brief as follows:

"The opinions constituted conclusions of law, and allowing an expert to testify to such conclusions invades the function of the jury. * * *

* * *

"Compounding the Court's error was its permission to allow that expert to comment on Michigan law. Prior to giving his opinion, Mr. Jackson commented on the legal definition of insanity in Michigan. * * * This testimony made the witness more influential with the jury. He usurped the function of the Judge."

In short, the issue presented is whether the expert witness's opinion testimony is incompetent because it addresses a question of law, thereby invading the province of the judge and jury.

Both the expert and lay witness may express their opinions on the mental condition of the accused at the time of the charged offense, although, in the latter case, the witness must base his opinion on "the facts and circumstances within [his] own knowledge". *People v Cole,* 382 Mich 695, 707; 172 NW2d 354 (1969).

"A witness who is qualified as an expert on the subject of insanity may state his opinion of a person's mental condition upon the basis of observation, a hypothetical question, or the testimony of other witnesses." 3 Wharton, Criminal Evidence (13th ed), § 609, pp 173-174.

*People v Hawthorne,* 293 Mich 15; 291 NW 205 (1940), *People v Lamont Crawford,* 66 Mich App 581; 239 NW2d 670 (1976), 23 CJS, Criminal Law, § 867c, 31 Am Jur 2d, Expert & Opinion Evidence, § 86. Opinion evidence of this sort is not objectionable merely because it embraces an ultimate issue of fact to be decided by the jury. MRE 704, *Commonwealth v Marshall,* 364 NE2d 1237, 1242 (Mass, 1977), *Smith v State,* 265 Ind 283; 354 NE2d 216 (1976), *Williams v State,* 265 Ind 190, 199; 352 NE2d 733 (1976), *Commonwealth v Knight,* 469 Pa 57, 70-75; 364 A2d 902 (1976), *United States v Scavo,* 593 F2d 837, 843-844 (CA 8, 1979), *United States v Milton,* 555 F2d 1198 (CA 5, 1977), *United States v Erskine,* 588 F2d 721, 722 (CA 9, 1978). Compare, *United States v Milne,* 487 F2d 1232, 1234-1235 (CA 5, 1973), *United States v Chandler,* 393 F2d 920, 926, fn 17 (CA 4, 1968), *Washington v United States,* 129 US App DC 29, 31; 390 F2d 444

(1967), see Saltzburg & Redden, Federal Rules of Evidence, Manual (2d ed) (1980 Supp), Rule 704, p 183, see generally McCormick, Evidence, § 12, pp 26-28, 7 Wigmore, Evidence, §§ 1920, 1921.

It is important to note, therefore, that a qualified witness may testify that the accused is suffering from a mental condition involving "substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life", MCL 330.1400a; MSA 14.800(400a). In addition, the opinion rule does not prevent that witness from concluding that, as a consequence of the above mental condition, the accused "lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law". MCL 768.21a(1); MSA 28.1044(1)(1). The question which remains is whether the expert witness can go one step further, proceeding to opine that because defendant suffered from some or all of the foregoing mental conditions resulting in "mental illness", he was "insane" at the time of the alleged offense.

The precise issue was raised and cursorily answered in a footnote, contrary to defendant's contention, in *People v Livingston,* 57 Mich App 726, 733, fn 8; 226 NW2d 704 (1975), *remanded* 396 Mich 818 (1976), and again in *People v Crawford,* 89 Mich App 30, 36-37; 279 NW2d 560 (1979). However, because the issue never has been addressed in depth, and because applicable propositions of law seemingly dictate a contrary conclusion, it is necessary to consider the issue at length.

The concept of mental illness and insanity suggests reference to the medical and psychiatric sciences. Still, we have little difficulty in conclud-

ing that the definition used to describe those terms, at least for purposes of avoiding criminal responsibility, must come from the law. *People v Martin,* 386 Mich 407, 415-423; 192 NW2d 215 (1971), *cert den sub nom Lewis v Michigan,* 408 US 929; 92 S Ct 2505; 33 L Ed 2d 342 (1972), Biggs, *The Guilty Mind: Psychiatry & The Law of Homicide,* (Isaac Ray Award Lecture Series, 1955), p 117. Hence, when the issue of insanity is raised in a criminal case, the trial court has the responsibility to properly charge the jury on the elements of the defense. MCL 768.29a; MSA 28.1052(1). Once instructed on the issue, however, the jury or trier of fact is required to decide the ultimate issue of the defendant's sanity at the time of the offense. *Martin, supra,* 422, *People v Woody,* 380 Mich 332; 157 NW2d 201 (1968). While the expert knowledge of psychiatrists and psychologists can be of assistance to the jury in arriving at their determination, *Hawthorne, supra,* the jury has the sole responsibility of applying the given rules of law to the facts relating to the defendant's mental condition. *Martin, supra,* 415-419, 422.

Although the ultimate issue rule no longer stands in the way of expert testimony stating opinions on crucial questions to be decided by the trier of fact, it is important that the expert witness not be permitted to testify about the requirements of law which apply to the particular facts in the case or to phrase his opinion in terms of a legal conclusion. In the former case, the claim is that the province of the judge is invaded, while in the latter, the contention is that the province of the jury is invaded.

I. *Invading the province of the judge*

Where the area of the witness's expertise is within the special knowledge of the trial judge

who is charged with having special legal knowledge and the duty to instruct the jury on the applicable law, then the witness's opinion on the same matter is properly excluded as invading his province. Thus, the basis for objecting to expert opinions on legal matters is related to the notion that the witness's judgment on that matter is not necessary since the trial judge can determine the matter equally well. 7 Wigmore, *supra,* § 1952.

In *People v Lyons,* 93 Mich App 35, 45-47; 285 NW2d 788 (1979), this Court held that, even though he was a securities expert, it was erroneous to permit an expert witness to supply his definition of the statutory term "security" under MCL 451.501(3); MSA 19.776(101)(3) because it was the exclusive responsibility of the trial judge to find and interpret the applicable law.

"Allowing witnesses to testify as to questions of law invites jury confusion and the possibility that the jury will accept as law the witness's conclusion rather than the trial judge's instructions."

Likewise, a medical expert's opinion as to the applicable law of criminal responsibility for insanity is of no aid to the jury and could possibly confuse them in light of their duty to apply the law solely as explained by the judge at the end of the case. *State v Kelly,* 118 NJ Super 38, 54; 285 A2d 571 (1972).

To this extent, then, the witness's legal opinion on the issue of insanity is both incompetent and irrelevant. The testimony is incompetent because opinions by medical experts on the correct legal standard of criminal responsibility in Michigan is outside the range of the witness's expertise in the field of mental diseases. *Commonwealth v O'Con-*

*ner,* 387 NE2d 190, 195-196 (Mass App, 1979), *State v Kelly, supra,* 7 Wigmore, *supra,* § 1952. The testimony is also irrelevant because it is not "otherwise admissible" under MRE 403, 701, 702. MRE 704, McCormick, *supra,* § 12, p 27, fn 47. Thus, even if the medical expert were competent to testify about his understanding of the applicable legal standard for insanity, the resultant "confusion of the issues or misleading the jury" by a potentially conflicting instruction given by the trial judge would be a proper ground for excluding the testimony from trial. MRE 403. This is especially true where there is possibility that the witness might develop his own legal definition, standard, or criterion for measuring criminal insanity or mental illness. *Kempsey v McGuiness,* 21 Mich 123 (1870), *In re Powers Estate,* 375 Mich 150; 134 NW2d 148 (1965), *Lyons, supra,* 46-47.

A witness may not give his opinion as to what law is applicable in a given case but may, of course, testify to the facts relevant to the applicable legal principles. Also, where the legal criteria are adequately defined by the questioner or the trial court, MCL 768.29a(1); MSA 28.1052(1)(1), so as to be correctly understood by the jury, the witness may properly phrase his opinion in terms of some familiar legal standard. McCormick, *supra,* § 12, pp 28-29. Generally, the witness should state his opinion of the defendant's mental condition in his own language and by such ordinary and professional forms of expression as will best convey his own ideas of the matter. Still, if, in expressing his ideas and opinion on the matter, the witness refers to legal standards properly explained by the trial court or examining attorney, there can be no danger of usurping the role of the trial judge to deal with questions of law.

"The capacity of an *accused person* to be legally responsible for the crime charged depends * * * upon a legal definition; and it would therefore be * * * improper to ask for the witness' testimony *without first eliminating the element of law from the question."* 7 Wigmore, *supra,* § 1958(2), p 123. (Emphasis added.)

Contrast, *People v Liggett,* 378 Mich 706; 148 NW2d 784 (1967).

The courts in other jurisdictions support introduction of an expert witness's opinion testimony relating to the defendant's sanity or insanity against a challenge that it is a question of law properly reserved for the trial judge. *Commonwealth v O'Conner, supra, Commonwealth v McHoul,* 352 Mass 544, 553-554; 226 NE2d 556 (1967), *Atkinson v State,* 391 NE2d 1170, 1175 (Ind App, 1979), *Commonwealth v Sheehan,* 383 NE2d 1115, 1120 (Mass, 1978), *State v Skaggs,* 586 P2d 1279, 1283 (Ariz, 1978), *Hurst v State,* 356 So 2d 1224, 1236 (Ala Crim App, 1978), *State v Jensen,* 251 NW2d 182, 189 (ND, 1977), *Bethea v United States,* 365 A2d 64, 81 (DC App, 1976), *Beardslee v United States,* 387 F2d 280, 295 (CA 8, 1967). And see, 10 Model Penal Code (ULA), § 4.07, pp 495-496, Ladd, *Expert Testimony,* 5 Vanderbilt L Rev 414, 423 (1952).

In the case at bar, there was no invasion of the trial judge's province to instruct the jury on the applicable principles of law relating to the defendant's asserted defenses of insanity and mental illness. The testimony of the expert witnesses, doctors Lucas and Jackson, did not involve the giving of an opinion on the issue of what is or should be the appropriate legal standard for determining whether an individual should be held criminally responsible for his behavior. Rather, once given the appropriate legal standards by either the

examining attorney or the trial judge, the witnesses applied their medical/psychological findings and conclusions to those standards and opined that the defendant was or was not mentally ill and/or insane at the time of the charged offense. Their testimony involved a subject matter completely unrelated to the judge's special legal knowledge and did not conflict with any of the instructions read to the jury at the close of the case. As such, their testimony did not invade the province of the trial judge to govern over matters of law.

II. *Invading the province of the jury.*

Defendant contends that to permit an expert witness to testify that the accused is "mentally ill" or "insane" is a conclusion of law which is akin to giving an impermissible opinion on the guilt or innocence of the accused. *People v Parks,* 57 Mich App 738, 750; 226 NW2d 710 (1975), *People v Stoddard,* 48 Mich App 440, 448; 210 NW2d 470 (1973), *People v Row,* 135 Mich 505, 507; 98 NW 13 (1904). The leading case which most accurately states the applicable principle of law is *Grismore v Consolidated Products,* 232 Iowa 328, 361; 5 NW2d 646 (1942). There the Iowa Supreme Court stated:

"When a standard, or a measure, or a capacity has been fixed by law, no witness whether expert or nonexpert, nor however qualified, is permitted to express an opinion as to whether or not the person or the conduct in question measures up to that standard. On that question the court must instruct the jury as to the law, and the jury must draw its own conclusion from the evidence."

Accordingly, a witness is not permitted to tell the jury how to decide the case. Thus, a witness is prohibited from opining on the issue of a party's negligence or nonnegligence, capacity or noncapac-

ity to execute a will or deed, simple versus gross negligence, the criminal responsibilty of an accused, or his guilt or innocence. *Id., James v Krpan,* 116 Ariz App 216; 568 P2d 1114 (1977), *Parks, supra, Stoddard, supra, Row, supra.*

The reason for this rule is that where a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury. *People v Walker,* 40 Mich App 142, 145; 198 NW2d 449 (1972), *People v O'Leary,* 6 Mich App 115; 148 NW2d 516 (1967). The same rule applies when it is an expert opinion being offered on a matter equally within the scope of a jury's common knowlege. *People v McGillen #2,* 392 Mich 278; 220 NW2d 689 (1974), *People v Fritch,* 170 Mich 258; 136 NW 493 (1912), *People v Vanderhoof,* 71 Mich 158; 39 NW 28 (1888), *People v Miller,* 33 Mich App 279; 189 NW2d 789 (1971), *People v Zimmerman,* 12 Mich App 241; 162 NW2d 849 (1968). However, where the expert's particular training and experience in a special field of activity—such as the study of mental diseases—is largely unfamiliar to the jury, his opinion can be submitted for the jury's consideration. *Id., People v Davis,* 217 Mich 661; 187 NW 390 (1922), *People v Pullen,* 24 Mich App 289; 180 NW2d 108 (1970). Accordingly, since it is undisputed that the expert witnesses in the case at bar were qualified to give expert opinions on the defendant's mental condition at the time of the offense, *Hawthorne, supra, Martin, supra,* it follows that they were not precluded from giving opinions related to the ultimate issue in fact on the ground that to do so would invade the province of the jury. MRE 704, see *Dudek v Popp,* 373 Mich 300; 129 NW2d 393 (1964).

There is no danger that the role of the jury will be usurped because the jury is always free to reject the testimony of any witness, including the opinions of experts. 7 Wigmore, *supra,* §§ 1920, 1921.

" 'The function of an expert witness in a case concerning sanity or insanity is advisory in nature. He does not state a *fact* but gives an *opinion* in order to aid the jury or trier of fact. The trier of fact must make the ultimate decision on this issue.' *Smith v. State* (1972), 259 Ind. 187 at 189, 285 N.E.2d 275 at 276. These opinions need not stop short of conclusions phrased in *Hill v. State* [252 Ind 601; 251 N.E.2d 429 (1969)]. In *Sotelo v. State* (1976), [264] Ind [298], 342 N.E.2d 844, for example, two court-appointed psychiatrists testified that the defendant in that case was unable to conform his conduct to the requirements of the law and was therefore legally insane. An opinion by an expert witness upon an ultimate fact in issue is not excludable for that reason. 'The argument that such an opinion usurps the function of the jury is simply not valid. When the opinion is given, the witness has no such intent and could not accomplish this feat even if he wanted to for the simple reason that the jury is free to reject the opinion and accept some other view.' *DeVaney v. State* (1972), 259 Ind. 483 at 490, 288 N.E.2d 732 at 737." *Williams v State,* 265 Ind 190, 199; 352 NE2d 733 (1976).

In the case at bar, the jury did just that. While the defendant's expert witness testified that in his opinion the defendant was mentally ill resulting in his "insanity", the prosecution's expert witness opined that the defendant was not mentally ill and, therefore, could not be legally insane. The jury seemingly rejected both of these points of view, choosing instead, in finding him guilty, to conclude that the defendant was mentally ill, but not insane. As a result of this verdict, we can

confidently say that the jury did not feel bound by the opinions of the expert witnesses; it was free to and did reach its decision notwithstanding the "legal conclusions" made by the witnesses at trial.

Accordingly, the trial court did not err in permitting the expert witnesses to testify that in their opinion the defendant was or was not "mentally ill" or "insane" at the time of the alleged offense. The objection that such testimony is an improper legal conclusion, invading the provinces of the judge and jury, is without merit.

Defendant raises the issue of whether the trial court abused its discretion in denying defendant's motion for continuance for the purpose of further physical evaluation, thereby violating his right to a court-appointed psychiatric evaluation pursuant to MCL 768.20a(3); MSA 28.1043(1)(3).

Seven days prior to the commencement of the scheduled trial, defendant filed a motion for continuance for the purpose of obtaining further evaluation in Illinois regarding whether alcohol (purportedly consumed by defendant on the night of the alleged crime) could cause abnormal changes in defendant's brain wave activity, resulting in defendant's insanity at the time of the crime. At the hearing on the motion held two days later, defense counsel explained the lateness of the motion by the fact that he had only recently become familiar with the new testing procedure and that there was no closer facility for conducting the particular evaluation sought than the one in Illinois. The trial court denied the motion on the grounds that it came too late and that it would be an onerous burden on the court and the county financial system to send the defendant out of state for an evaluation. The court stated that its decision would be different if the examination were to

take place in Michigan. In denying defendant's motion for new trial on the same issue, the trial judge added that the reason for his denial included that:

"1. The cost would be prohibitive.

"2. It was not demonstrated that the procedure was scientifically accurate, nor widely accepted.

"3. It was not demonstrated that the procedure would be applicable to this Defendant.

"4. Defendant did not demonstrate that the program would accept him as a patient."

The granting or denial of a motion for continuance is subject to the discretion of the trial court, and, absent a clear abuse of such discretion, the decision will not be overturned. *People v Knox,* 364 Mich 620; 111 NW2d 828 (1961), *People v Carter,* 54 Mich App 69, 73; 220 NW2d 330 (1974). In *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1972), the Supreme Court reversed the trial court for denying defendant's motion for continuance, enumerating various factors which the Court considered important in reviewing the matter. These factors were acknowledged and applied in *People v Wilson,* 397 Mich 76, 81; 243 NW2d 257 (1976):

"1) [T]he defendant was asserting a constitutional right; 2) he had a legitimate reason for asserting the right; 3) he was not quilty of negligence; 4) prior adjournments of trial were not at the defendant's behest. To these four points we add the traditional requirement that defendant on appeal must demonstrate prejudice resulting from the trial court's abuse of discretion. MCLA 769.26; MSA 28.1096.

"These five factors, while not the *sine qua non* to a determination of abuse of discretion, are useful criteria in this case."

Application of factors 4, 3 and 2, respectively, leads us to conclude that the trial judge did not abuse his discretion in denying defendant's motion for a continuance.

First, it must be assumed that defendant adequately demonstrated prejudice to his cause. Although the primary defense to the criminal sexual conduct charge was insanity, the defendant "might have lost a possible defense" by his alleged inability to present a valid, albeit related, defense of insane reaction to alcohol. *Roberts v People*, 19 Mich 401, 419-423 (1870), *People v Toner*, 217 Mich 640; 187 NW 386; 23 ALR 433 (1922). There is no evidence in the record that the defendant caused the trial to be adjourned several times before. *Wilson, supra*, 83.

The motion for continuance was untimely. The offense occurred on the night of August 27, 1978. A complaint was issued the following day, and defense counsel appointed shortly thereafter. On September 13, 1978, defense counsel gave notice that he proposed to claim an insanity defense. A motion and order for independent psychiatric evaluation was filed on September 20 and 26, 1978, respectively. On October 3, 1978, the prosecutor's motion for examination at the Center for Forensic Psychiatry was granted. On October 31, 1978, the trial judge notified the parties that the trial was scheduled for November 27, 1978, and no objection was raised or filed. On November 8, 1978, defendant was found competent to stand trial. It was not until November 20, 1978, that defense counsel filed the motion for continuance, nearly three weeks after the matter was set for trial and only one week prior to the scheduled trial date. While the motion was not per se untimely, the record reflects that the only reason the motion came so

late was because defense counsel was not familiar with the possible defense of alcohol induced insanity. However, as the trial judge indicated at the hearing on the motion, the particular defense had been in existence and recognized in this state since at least 1870. *Roberts, supra.* As such, we are disinclined to consider the trial judge's finding of untimeliness a clear abuse of discretion, particularly where the defendant's motion for independent evaluation was made and granted nearly two months prior to his later motion for further evaluation.

As previously noted, defendant had made an initial showing that he had a valid defense based upon the facts elicited at the preliminary examination. *Roberts, supra, Toner, supra.* Still, there was no showing that defendant had a bona fide right to require the state to incur the expense of sending him to Illinois for the requested evaluation. *United States ex rel Smith v Baldi,* 344 US 561; 97 L Ed 549; 73 S Ct 391 (1953), *Barber v State,* 248 Ark 64; 450 SW2d 291 (1970), Anno: *Right of indigent defendant in criminal case to aid of state by appointment of investigator or expert,* 34 ALR3d 1256, § 6b, c, d, pp 1278-1286. Rather, the decision to grant the request, like the decision to grant the request for a continuance, seemingly rests in the sound discretion of the trial judge. *Id. Cf. People v Atsilis,* 60 Mich App 738; 231 NW2d 534 (1975). Accordingly, it is evident that the defendant did not have a legitimate reason for requesting a continuance for the purpose of conducting the out-of-state evaluation.

Accordingly, there was no abuse of discretion in the trial court's denial of defendant's motion for a continuance and further physical evaluation.

Affirmed.