*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GARY TERRAIL MAHDI,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2019

No. 342027
Oakland Circuit Court
LC No. 2014-252234-FH

Before: JANSEN, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals by right from his convictions, entered after a retrial,[1] of two counts of possession with intent to deliver less than 50 grams of cocaine and heroin, MCL 333.7401(2)(a)(*iv*), and one count of possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). We affirm.

## I. BACKGROUND

Defendant's convictions arise from a drug investigation by the Oakland County Sheriff's Department that culminated in the execution of a search warrant at an apartment located at 45 Lantern Lane. Defendant lived in a neighboring apartment, but was seen entering 45 Lantern Lane on 10 to 15 occasions in the five weeks preceding the execution of the warrant. During the search, officers found "baggies" of marijuana, cocaine, and heroin. Several "baggies" were found in a larger Sam's Club grocery bag which also contained defendant's Auto Zone rewards

---

[1] After his first trial, defendant was similarly convicted of two counts of possession with intent to deliver cocaine and heroin, MCL 333.7401(2)(a)(*iv*), and one count of possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). *People v Mahdi*, 317 Mich App 446, 451; 894 NW2d 732 (2016). This Court held that the trial court erred by admitting certain evidence and remanded the case to the trial court, which held a new trial. *Id.* at 462-474. There is no concern that the trial court did not follow this Court's previous rulings on remand.

card, two recent hotel receipts containing defendant's name, and a scale. The marijuana was packaged in a bag of approximately 10 grams and a bag of approximately 6 grams; the heroin was packaged into four "baggies" ranging in size from 0.1 to 1.2 grams; and the cocaine was in the form of a "crack rock." Other baggies of drugs were found throughout the apartment. Officers also found several items indicative of drug trafficking in the apartment, including plastic sandwich bags with the corners cut off and latex gloves. At trial, Detective Daniel Main testified that the items found in the search of 45 Lantern Lane were consistent with a drug-trafficking operation.

As noted previously, the jury found defendant guilty of possessing with the intent to deliver cocaine, heroin, and marijuana. The trial court departed upward from defendant's sentencing-guidelines range and sentenced defendant to concurrent prison terms of 76 months to 40 years for the cocaine and heroin convictions and 76 months to 15 years for the marijuana conviction. This appeal followed.

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to sustain his convictions. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). The reviewing Court must determine if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved each essential element of the crime beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v James*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 339504); slip op at 4 (internal citation and quotation marks omitted). A trier of fact may consider circumstantial evidence and all reasonable inferences the evidence creates. *Solloway*, 316 Mich App at 180-181. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Flick*, 487 Mich 1, 24-25; 790 NW2d 295 (2010) (internal citation and quotation marks omitted).

As an initial matter, defendant does not argue that the evidence at trial was insufficient to prove an intent to deliver. Indeed, the "baggie" packaging of those substances, and the presence of scales, latex gloves, and plastic bags with their corners cut off all indicate that the possessor of the substances intended to sell them. See, e.g., *People v Konrad*, 449 Mich 263, 271 n 4; 536 NW2d 517 (1995); *People v Wolfe*, 440 Mich 508, 524; 489 NW2d 748 (1992). Defendant argues, however, that the evidence was insufficient to prove that he possessed the substances, as opposed to some other person. We disagree.

"A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive." *Wolfe*, 440 Mich at 519-520. Mere presence near a controlled substance is insufficient to prove constructive possession. *Id.* at 520. Constructive possession exists when the totality of the circumstances indicates a nexus

between the defendant and the substance sufficient to support an inference that the defendant exercised dominion and control over it. *Id*. at 521.

Viewed in the light most favorable to the prosecution, the totality of the evidence in this case was sufficient for a rational factfinder to find, beyond a reasonable doubt, that defendant possessed the controlled substances. Although the substances were not found in defendant's apartment, they were found in a neighboring apartment which defendant had frequently visited over the course of five weeks. Moreover, the substances were found inside a bag that contained several pieces of identifying information—each of which pointed to defendant. On the day of the search, defendant was observed moving items around in the trunk of a Buick Regal parked about 20 yards from 45 Lantern Lane. An Auto Zone rewards card issued in defendant's name was found in the bag containing the controlled substances. The records for this card indicate that it was used primarily for the Regal. Inside the Regal, police also found a baggie of marijuana which was packaged similarly to the drugs inside the Sam's Club bag. Moreover, a Play Station game console was found in the Regal and games for that console were found in the Sam's Club bag. None of the items in the Sam's Club bag could be traced to any other person who had frequented 45 Lantern Lane.

Although circumstantial, this evidence was sufficient to form a rational connection between defendant and the controlled substances found in 45 Lantern Lane—particularly those found in the Sam's Club bag—such that a reasonable jury could conclude beyond a reasonable doubt that defendant exercised dominion and control over them. Accordingly, the evidence was sufficient to prove that defendant possessed the substances.

## B. EXPERT TESTIMONY

Defendant argues that the trial court erred by admitting Detective Main's opinion testimony. A trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v Muhammad*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 338300); slip op at 1. "Preliminary questions of law, such as whether a rule of evidence or statute precludes admission of particular evidence, are reviewed de novo." *Id*. (internal citation and quotation marks omitted). A trial court abuses its discretion when it admits evidence inadmissible as a matter of law. *Id*.

The prosecution offered Detective Main as "an expert in the area of street level drug crimes." Detective Main testified that he had been a police officer for almost 20 years and had investigated over 5,000 drug-related crimes. Detective Main had received training related to drug trafficking from several law-enforcement agencies and had testified as an expert in several state and federal courts. Detective Main testified that he was well-versed in drug-terminology as well as the packaging, distribution, and prices for illegal drug transactions. Based on this testimony, the trial court admitted Detective Main as an expert in street-level drug crimes.

Detective Main testified that he was the officer in charge of the investigation into the drug activity at 45 Lantern Lane. Detective Main participated in the search of the apartment, during which officers discovered numerous plastic bags with their corners cut off, latex gloves, scales, cocaine, marijuana, and heroin. Detective Main noted that the drugs were packaged into separate baggies, which was consistent with a street-level drug-sale operation. Detective Main

testified that a syringe was found in a garbage bag in the apartment, but opined that the syringe did not indicate heroin use because no other items consistent with drug use were found in the apartment. Detective Main noted, however, that items consistent with marijuana use were found in the apartment.

The prosecution questioned Detective Main regarding the marijuana found in the Regal and 45 Lantern Lane, asking "were you able to form an opinion whether that marijuana the way it was found is more consistent with personal use or possession with intent to deliver?" Detective Main responded that "based on all the factors that we found inside the apartment, it's more consistent with the intent to deliver." Detective Main testified that his opinion was based on "the presence of the latex gloves, the packaging material, the used baggies with the corners missing, and then [drugs] broken down individually packaged for sale."

On appeal, defendant does not argue that the trial court erred by admitting Detective Main as an expert witness. Rather, defendant argues that Detective Main's testimony amounted to an improper opinion on defendant's ultimate guilt or innocence. An expert witness's opinion testimony "does not become objectionable merely because 'it embraces an ultimate issue to be decided by the trier of fact.' " *People v McFarlane*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336187); slip op at 4. An expert witness invades the province of the jury, however, when he or she expresses "an opinion of the defendant's guilt or whether the defendant had a culpable state of mind." *Id*. at ___; slip op at 6.

Here, Detective Main did not give an opinion of defendant's guilt or state of mind. Rather, Detective Main testified that many items found in the apartment were indicative of drug trafficking, although he acknowledged that other items were indicative of personnel use. Detective Main did not opine that *defendant* had an intent to deliver controlled substances, but testified that, as a whole, the *items* in the apartment would be consistent with such an intent. Accordingly, detective Main's testimony is best understood as an explanation of the significance of the evidence, rather than any opinion of defendant's guilt or state of mind. As such, the trial court did not err by admitting Detective Main's opinion testimony.[2]

Relatedly, contrary to defendant's argument on appeal, the prosecution did not err by referencing Detective Main's testimony in its closing argument. Prosecutors are "free to argue

---

[2] We note that the prosecution's and Detective Main's use of the phrase "intent to deliver" was ill-advised. An expert witness may not "phrase his opinion in terms of a legal conclusion." *McFarlane*, ___ Mich App at ___; slip op at 4, quoting *People v Drossart*, 99 Mich App 66, 75; 297 NW2d 863 (1980). Accordingly, we believe the "best practice" would be for experts to avoid phrasing their opinion in statutory terms. See MCL 333.7401(1) ("[A] person shall not . . . possess with *intent to . . . deliver* a controlled substance . . . .") (emphasis added). Nonetheless, we do not review an expert witness's testimony for best practices. Despite the use of the statutory phrase, we are unable to conclude that Detective Main's testimony invaded the province of the jury. As noted previously, when taken in context, Detective Main's testimony is best understood as an explanation of the significance of certain items found in the apartment at 45 Lantern Lane, not a comment on defendant's guilt or innocence.

the evidence and reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

## C. REASONABLE SENTENCE

Finally, defendant challenges his out-of-guidelines sentence. We review an out-of-guidelines sentence for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

A sentence is reasonable when it is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, 500 Mich at 471. See also *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990). When sentencing an individual defendant, the trial court must first score the sentencing guidelines and take them into account. *Lockridge*, 498 Mich at 391. If the trial court chooses to depart from the sentencing guidelines, it must justify the departure on the record by explaining "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (internal citation and quotation marks omitted). Relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range "include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id*. (internal citations omitted).

Here, the trial court found that the guidelines range did not take into account defendant's extensive criminal history. Indeed, defendant had six prior felonies and 13 misdemeanor convictions, which resulted in a prior record variable score of 125 points—50 points above the maximum score of 75 points. The trial court considered defendant's previous conviction for a very similar offense and the fact that defendant was on probation for a drug conviction when he committed the instant offenses. Defendant's recidivism, according to the trial court, demonstrated that defendant had not been rehabilitated by his previous sentences and that a within-guidelines sentence would not deter defendant from committing future crimes. The trial court found that a 30-month upward departure from the guideline's range was appropriate. In coming to this conclusion, the trial court found that defendant's conduct was similarly egregious to the conduct considered in the next-highest guidelines range. Accordingly, the trial court issued a sentence falling within this next-highest range.

Although the trial court's 30-month departure was a substantial increase from the upper-end of the guidelines range, it was not unjustified. We agree with the trial court that defendant's recidivism justified an increased sentence. The trial court's well-reasoned justification for its out-of-guidelines sentence adequately explained why the sentence imposed was more proportionate than a within-guidelines sentence would have been.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher