*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 16, 2019

Plaintiff-Appellee,

v

No. 340931
Van Buren Circuit Court
LC No. 2016-020783-FC

JASON BRENT KEISTER,

Defendant-Appellant.

Before: GLEICHER, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Defendant, Jason Brent Keister, appeals as of right his jury convictions for first-degree criminal sexual conduct, MCL 750.520b(2)(b) (defendant is over the age of 17 and victim is under the age of 13), and second-degree criminal sexual conduct, MCL 750.520(c)(1)(a) (victim is under the age of 13). The trial court sentenced defendant to concurrent terms of 25 to 40 years' imprisonment for defendant's first-degree criminal sexual conduct conviction and 36 months to 15 years' imprisonment for defendant's second-degree criminal sexual conduct conviction. On appeal, defendant argues (1) that the trial court plainly erred in permitting multiple witnesses to corroborate the victim's out-of-court statements at trial under MRE 803A; and (2) that the trial court plainly erred in permitting a child sex abuse expert's testimony in violation of *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995). We affirm.

## I. BACKGROUND

The victim, C.M., was eleven years old at the time of the trial. She testified that in October 2014, she was nine years old and lived with her mother, her brother, and defendant, who was her mother's then-boyfriend. The victim testified that defendant touched her on more than one occasion and had shown her pornographic videos of a woman performing fellatio on a man. While watching the video, the victim stated that defendant told her that she and defendant "should do this." The victim also testified that she would occasionally watch sporting events on television with defendant without her mother or brother present. C.M. recalled the first instance of touching while she and defendant watched a basketball game on television on the victim's mother's bed. The victim indicated that defendant "touched [her] front private part" with his

-1-

hand underneath her shorts and subsequently proceeded to forcefully insert his penis in her mouth. Furthermore, the victim testified that defendant grabbed her hand and put it on his penis.

The second incident occurred while she and defendant were sitting on the living room couch and the victim's mother was in the bedroom. The victim testified that defendant grabbed her hand and placed it over his penis. The third incident occurred when the victim's friend, J.M., came over to the victim's home for a sleepover. J.M. had fallen asleep while watching television with the victim and defendant. Defendant subsequently moved next to the victim, pulled down his shorts, and forced the victim to perform fellatio on him while he moved "back and forth." The victim described a fourth incident in which defendant digitally penetrated her vagina. In whole, the victim testified that defendant placed his penis in her mouth more than five times but less than ten. On the last occasion, the victim testified that she saw a "water substance" coming out of defendant's penis. At the time, the victim did not know what semen was, but was later able to identify it during trial, as a result of sex education at her school.

Following the last incident, the victim told J.M. about her encounters with defendant, and then she later reported it to her mother. The victim's mother testified that the victim told her that "defendant made [her] suck his dick" the morning following the sleepover with J.M. The mother then confronted defendant. The mother testified that defendant did not outright deny the victim's claims, but rather, appeared appalled and started to cry. The next day, the mother removed her children from the home and took them to her father's house. She then contacted Van Buren Mental Health for guidance on how to proceed. The mother testified that she noticed changes in the victim's behavior over the previous few months where she would get upset and go to her room for no reason. Cody Deutsch, a probation officer for the Michigan Department of Corrections and former Department of Health and Human Services worker, testified that in February of 2015, he received a report from the Van Buren Mental Health Services regarding defendant's alleged sexual misconduct toward the victim.

The victim was then brought to Dr. Angela May, a pediatrician trained in the practice of child abuse and neglect medicine at Spectrum Health at the Center for Child Protection at Helen DeVos Children's Hospital. The trial court qualified Dr. May as an expert in child abuse and neglect medicine. Dr. May testified that she examined the victim on March 17, 2015, or approximately four weeks after the victim's initial disclosure. Dr. May's examination did not reveal any injuries to the victim's genital or rectal areas; however, Dr. May noted that she would not have expected to necessarily find any injuries. Dr. May's diagnosis from the victim's full medical examination was that there was "probable pediatric sexual abuse."

The trial court also qualified Gloria Gillespie, a therapist specializing in counseling sexually abused children and perpetrators of child sexual abuse, as an expert in child abuse. Gillespie testified that she did not personally know defendant, nor had she conducted an interview with him, with the victim, or with anyone else related to the case. Gillespie testified regarding different concepts, such as grooming, where a perpetrator attempts to establish trust between them and a potential victim. She also explained how victims do not necessarily know or understand what is happening at the time of the abuse. She further explained that there are often delays in reporting of sexual abuse because children do not fully understand sexual relationships and become easily embarrassed. Gillespie testified that it is normal for a victim of sexual abuse

to not want to talk about their abuse and may be unable to recall particular details when describing the incidents of abuse.

Trooper Toby Marshall, a Michigan state police officer, was made aware of allegations against defendant and began an investigation. Upon interviewing defendant, defendant denied the allegations of sexual abuse and denied having any physical contact with the victim of a sexual nature. Defendant admitted to watching pornography on his iPad on at least one occasion. However, he claimed that as soon as he became aware that the victim saw him watching it, "he immediately swiped the video away so it wasn't visible" and that "he had just opened it when he heard the noise, so it was only on for a couple–two or three seconds."

The jury found defendant guilty of one count of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. This appeal ensued.

## II. HEARSAY EXCEPTION

Defendant's first contention on appeal is that the trial court improperly allowed three separate witnesses to corroborate the victim's testimony under MRE 803A and MRE 803(24). Because defendant did not object to any of the challenged statements at trial, this claim is unpreserved. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). This Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The plain-error test has four elements:

> "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) . . . the plain error affected substantial rights . . . [, and 4)] once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." [*People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (alterations in original), quoting *Carines*, 460 Mich at 763-764.]

"A 'clear or obvious' error under the second prong is one that is not subject to reasonable dispute." *Randolph*, 502 Mich at 10 (quotation marks and citation omitted). "The third *Carines* element 'generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings.' " *Id.*, quoting *Carines*, 460 Mich at 763.

MRE 803A is the codification of the common-law "tender years" hearsay exception. *People v Douglas*, 496 Mich 557, 573; 862 NW2d 587 (2014). This hearsay exception permits secondary witnesses to bolster the credibility of a child complainant in sexual abuse cases. See *People v Gursky*, 486 Mich 596, 607; 786 NW2d 579 (2010). Historically, the rationale for admission was that such statements can have the hallmarks of trustworthiness, especially where the statement "is shown to have been spontaneous and without indication of manufacture; and delay in making the complaint is excusable so far as it is caused by fear or other equally effective circumstance." See *People v Baker*, 251 Mich 322, 326; 232 NW2d 381 (1930) (explaining

justification of common-law tender years hearsay exception). However, because "[a]s time goes on, a child's perceptions become more and more influenced by the reactions of the adults with whom the child speaks . . . the tender-years rule prefers a child's first statement over later statements." *People v Katt*, 468 Mich 272, 296; 662 NW2d 12 (2003).

MRE 803A provides:

A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

A statement may not be admitted under this rule unless the proponent of the statement makes known to the adverse party the intent to offer the statement, and the particulars of the statement, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

This rule applies in criminal and delinquency proceedings only. [MRE 803A.]

In *Douglas*, our Supreme Court addressed the requirement that "only the first" corroborative statement about an incident made by a child is admissible. *Douglas*, 496 Mich at 573-576. However, "incident" refers to discrete, particular occurrences. *Id*. at 575-576, 576 n 5. Importantly, if a statement by a child encompasses multiple incidents, admissibility of the *portion* of that statement addressing each incident must be analyzed independently. *Id*. If, for example, a child told an adult about two acts of assault, one of which the child had already disclosed to someone else, the portion of the child's statement regarding the other assault would

be admissible under MRE 803A.[1]  *Id*.  We consider each of the three challenged statements in turn.

First, defendant argues that the trial court improperly admitted a statement by the victim's mother that defendant had forced the victim to "suck his dick."  C.M. testified that, on multiple occasions, defendant touched her vagina, forced her to touch his penis, and made her perform fellatio on him.  Although defendant is correct that the victim first told a friend that defendant inappropriately touched her, the record demonstrates that the victim first revealed to her mother that defendant forced her to "suck his dick."  Because there were multiple instances of abuse, it can be reasonably inferred that declarant's statements to her friend and her mother referred to "distinct occurrences or events" of child sexual abuse.  Therefore, it appears that both were separately admissible under MRE 803A, so no error occurred.  See *Douglas*, 496 Mich at 575.  Even assuming the challenged statement was inadmissible hearsay, there is no reason for this Court to conclude that the mother's short statement affected the jury's verdict.  The jury members had the opportunity to directly evaluate the conflicting testimonies of the victim and defendant.  Thus, the jury was "free to believe or disbelieve, in whole or in part, any of the evidence presented."  See *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).  Thus, defendant has not demonstrated plain error affecting his substantial rights, and Butler's testimony is admissible under MRE 803A.

Second, defendant challenges Dr. May's testimony.  Defendant's primary argument is that the victim's physical examination did not reveal any signs of abuse.  Defendant argues that any statements the victim made regarding the underlying allegations of abuse to the doctor were therefore inadmissible.  The absence of immediately apparent physical injury does not preclude admission of a statement made to and relied on by a medical professional for the purpose of obtaining treatment, especially in cases of sexual assault.  *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011).  In addition, "[i]n cases of suspected child abuse, statements the child makes may be admitted under [MRE 803(4)] when the totality of circumstances surrounding the statements supports that they are trustworthy."  *People v Duenaz*, 306 Mich App 85, 95; 854 NW2d 531 (2014).  Although the trial court was not given any opportunity to perform a trustworthiness analysis because defendant did not challenge Dr. May's testimony at trial, defendant has not provided us with any reason to suspect that her testimony was even potentially untrustworthy.  We decline to "discover and rationalize the basis for [defendant's] claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."  *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

Although defendant does not clearly present this argument, it appears that defendant also contends that Dr. May's testimony constituted improper vouching for the victim's veracity or an improper opinion about whether defendant was actually guilty.  Again, defendant provides very little supporting argument.  *Mitcham*, 355 Mich 203.  Nevertheless, we note that although expert

---

[1] As was the case in *Douglas*, defendant does not challenge the spontaneity of the victim's statements or any other prerequisites to admissibility under MRE 803A.

witnesses may not render a legal conclusion about whether a particular crime was committed, it is perfectly proper for an expert to "testify to the facts relevant to the applicable legal principles" or provide an opinion within the scope of their expertise that happens to coincide with an ultimate issue. *People v Drossart*, 99 Mich App 66, 75, 77, 79-82; 297 NW2d 863 (1980). Furthermore, although an expert may not directly vouch for a victim's truthfulness, an expert may render an opinion about whether objective evidence found by the expert is consistent with a fact at issue. *People v James*, 182 Mich App 295, 297-298; 451 NW2d 611 (1990). We are unpersuaded that Dr. May's testimony was improper.

Defendant's final contention under MRE 803A is that Trooper Marshall's testimony on cross-examination that "he told [defendant] that he believed he did it" is indicative of a statement corroborating C.M.'s allegations. We disagree. This is simply not a statement corroborating the victim's trial testimony under MRE 803A, and neither the prosecution nor the trial court ever suggested otherwise. Moreover, defense counsel directly elicited this testimony on cross-examination. A defendant may waive even plain error review when his own conduct gives rise to the issue on appeal. See *People v Washington*, 461 Mich 294, 300; 602 NW2d 824 (1999) (holding that "a criminal defendant may not take advantage of his own wrong"). Defendant has not demonstrated clear error and we are not convinced that error, if any, affected the outcome of defendant's trial. See *Carines*, 460 Mich at 763.

### III. EXPERT TESTIMONY

Next, we consider defendant's argument that the trial court plainly erred in permitting a child sex abuse expert's testimony in violation of the Michigan Supreme Court's decision in *Peterson*. Defendant specifically challenges only Gillespie's testimony that, in her experience, it was possible that a perpetrator would molest a child with other individuals nearby, such as while seated on a couch with a blanket over the perpetrator and the child's laps. Defendant claims that this testimony "is extremely similar" to the victim's allegations because the victim testified that defendant sexually assaulted her in the living room as her friend slept nearby and while her mother was in the next room. We disagree.

Critically, Gillespie's challenged testimony is simply not addressed by *Peterson*. The *Peterson* Court addressed the admissibility of expert testimony "that a particular child's specific behavior is consistent with that of a sexually abused child" under certain circumstances. *Douglas*, 496 Mich at 601 n 8. However, "the *Peterson* Court simply did not address the admissibility of expert testimony concerning typical patterns of behaviors by adults who perpetrate child sexual abuse" and, therefore, was "not controlling" on the issue of whether testimony about "typical patterns of behavior exhibited by offenders" was inadmissible at trial. *People v Ackerman*, 257 Mich App 434, 444; 669 NW2d 818 (2003). Thus, "*Peterson* can only reasonably be read as discussing the circumstances under which expert testimony is admissible regarding the behavior of *children* who are victims of sexual abuse." *Id*. Because "most of our citizen-jurors lack direct knowledge of or experience with the typical forms of conduct engaged in by adults who sexually abuse children," expert testimony "about the typical patterns of behavior exhibited by child sexual abuse offenders would aid the jury" and was properly admitted in that case. See *id*. at 444-445.

We consider *Ackerman* dispositive. Notably, in defense counsel's opening statement at trial, he directly questioned whether the jury could believe that a sexual offender would sexually assault his girlfriend's daughter while his girlfriend was asleep in another room. This defense strategy placed the behaviors or typical patterns of child sex abusers directly at issue in this case. Because the contested expert testimony concerned the methods and behaviors of accused sexual offenders and not the behavior of the victim, the restriction set forth in *Peterson* did not apply. See *Id.* at 444. Accordingly, defendant has not demonstrated plain error affecting his substantial rights. He has not met his burden to prove that an error occurred, that the error was clear or obvious, or that the error resulted in a wrongful conviction or negatively affected the fairness or integrity of judicial proceedings. See *Carines*, 460 Mich at 763.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien