*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LEON EUGENE JACKSON, JR.,

Defendant-Appellant.

UNPUBLISHED
March 12, 2020

No. 346046
Van Buren Circuit Court
LC No. 2018-021474-FH

Before: MURRAY, C.J., and METER and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 16 months to 15 years in prison each for his convictions of CCW and felon-in-possession and two years in prison for the felony-firearm conviction consecutive to and preceding his sentence for being a felon-in-possession. Finding no errors requiring reversal, we affirm, but remand the case to the trial court for the ministerial task of correcting the clerical error on the judgment of sentence.

## I. BASIC FACTS

In April 2018, Sergeant Patrick Carlotto of the South Haven Police Department had a home under surveillance using a remotely operated video camera. Sergeant Carlotto knew defendant by sight from previous interactions.

Sergeant Carlotto saw defendant drive up to the home, park, get out of the car, and speak to two other men, Fletcher Clark and Leon Harris, who were also known to Sergeant Carlotto. Defendant returned to his car, retrieved an object, which he tucked into his belt, and walked back to the other men. Sergeant Carlotto believed that the object that defendant tucked into his waistline was a handgun. He recorded the video feed and dispatched two officers, Antwan Bell and Shawn Olney, to investigate further. Officers Bell and Olney proceeded to the scene, arrested defendant, and recovered a .380 caliber semiautomatic Cobra from the car that defendant drove to the home.

## II. SERGEANT CARLOTTO'S TESTIMONY

### A. STANDARD OF REVIEW

Defendant first argues that Sergeant Carlotto should not have been allowed to testify that it was "painfully obvious" to him that defendant had a handgun tucked into his waistband, among other things. He complains that Sergeant Carlotto's testimony impermissibly invaded the province of the jury.

This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v McFarlane*, 325 Mich App 507, 517; 926 NW2d 339 (2018). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013). This Court reviews de novo constitutional questions and whether the trial court properly applied the law applicable to the admission of evidence. *McFarlane*, 325 Mich App at 517. Because defendant's trial counsel did not object before the trial court on the same grounds that defendant now asserts on appeal, his claim is unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). This Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to establish a plain error, the defendant must show that there was a plain or obvious error and that the error affected the outcome of the lower court proceeding. *Id.*

### B. ANALYSIS

Generally, a witness may not testify about a matter unless he or she has personal knowledge of it. MRE 602. A witness who is not testifying as an expert may testify as to his or her opinion or inferences if his or her opinion or inference were "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." MRE 701. However, a lay witness invades the province of the jury if the witness offers an opinion or inference when the witness is in no better position than the jury to evaluate the evidence. *Fomby*, 300 Mich App at 52-53. In such cases, it is error to allow the witness to give his or her own opinion or interpretation of the facts because it is for the jury to decide the facts. *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980). If the lay witness has some special knowledge that gives the witness a better ability to interpret the video evidence, the witness's testimony is admissible because it is helpful to a clear understanding of the witness's testimony or it is helpful to the determination of a fact at issue. *Fomby*, 300 Mich App at 52-53; MRE 701.

At trial, Sergeant Carlotto testified generally about his own involvement in the investigation and arrest at issue. Specifically, he testified that he had been monitoring a surveillance camera and saw defendant drive up to the location on the live-feed video. He stated that he saw defendant conversing with two individuals and saw him return to his car and retrieve an object that he tucked into his waistband. He testified further that he "knew it to be a firearm." He explained that he knew that from "years of experience in law enforcement" and also from carrying his own firearms. Sergeant Carlotto testified that defendant's manner of carrying the object was referred to as an "appendix carry" and stated that he had arrested numerous individuals carrying a firearm in the same manner. He informed the jury that he "could clearly see from the

video that it was a firearm." It was that belief that led him to radio other officers to proceed to the location of the home and approach defendant.

Sergeant Carlotto's initial testimony did not involve a mere narration of events that he observed on the video. Sergeant Carlotto testified at that point as both a fact witness and a lay opinion witness. He told the jury the factual circumstances that caused him to create the video that the jury saw. In that sense, he testified from personal knowledge. MRE 602.

Sergeant Carlotto also described for the jury his contemporaneous interpretation of the video and his reaction to it. He identified the key persons depicted in the video using his personal knowledge of those persons. Additionally, without his testimony, the jury would not have understood how it came to be that Officers Olney and Bell were asked to respond to the scene and investigate. He further testified that he had had years of experience with handling handguns and had interacted with persons who carried handguns. His experience with persons who carried handguns in the same manner that defendant appeared to do in the video was helpful to the jury's interpretation of the video evidence—especially given that some jurors may be unfamiliar with handguns and the various ways in which they might be carried on one's person. Sergeant Carlotto's testimony also explained to the jury why Officers Olney and Bell were looking for a handgun on defendant or inside the Ford Taurus that he had been driving. Sergeant Carlotto's testimony about his interpretation of the video was rationally based on his perception and was helpful to a clear understanding of his role in events and to the determination whether the video showed defendant carrying a handgun. MRE 701. Moreover, the fact that Sergeant Carlotto's testimony implicated an ultimate issue did not render it improper if otherwise admissible under MRE 701. MRE 704. Consequently, Sergeant Carlotto's initial testimony did not improperly invade the jury's function as the sole determiner of the facts. *Drossart*, 99 Mich App at 80.

At trial, it was the defense theory that the officers involved did not conduct a thorough investigation, but rather jumped to the conclusion that defendant was guilty and only collected evidence that fit that predetermined view. The prosecution recalled Sergeant Carlotto to the stand after defense counsel cross-examined Officers Bell and Olney about the limited nature of their investigation. The prosecution sought to have Sergeant Carlotto explain why he did not collect fingerprint or DNA evidence from the gun. Sergeant Carlotto stated that he did not have fingerprints taken from the gun found in the Ford Taurus because "it was painfully obvious from the video that [defendant] was in possession of a firearm"; he explained that "it's clear to me that there's a firearm in his waistband um on that video and then afterwards there is not a firearm in his waistband so that it would logically be inside the car." He also opined that the "operator of a motor vehicle is responsible for everything that is within the motor vehicle so whether the gun was on his person or not he was in possession of it by merely operating the motor vehicle." He similarly stated that he did not collect DNA evidence because DNA was an expensive option and again it was "painfully obvious that that [was] a firearm in his waistband." He said too that he knew that defendant was associated with the weapon from his follow-up investigation at On Target Firearms, which showed that defendant used a "straw purchase" to get the gun.

Sergeant Carlotto's opinion that it was "painfully obvious" to him that the video showed defendant with a handgun was offered in the context of explaining why he did not order the collection of fingerprint and DNA evidence—that is, he offered his interpretation of the video evidence as the explanation for his subsequent acts. This testimony was rationally based on his

-3-

perception and helpful to a clear understanding of his reasons for his decision to circumscribe the investigation in the way that he did. MRE 701. Accordingly, it did not amount to an improper invasion of the jury's province as the fact-finder, *Drossart*, 99 Mich App at 80, even though it embraced the ultimate issue whether defendant possessed a firearm, MRE 704. The jury already understood that Sergeant Carlotto acted on the assumption that the video that he saw showed defendant with a handgun tucked into his waistband, and the jury was free to accept or disregard his interpretation of the video evidence after its own review.

Sergeant Carlotto's testimony about the inferences that he drew from the evidence that was collected from On Target Firearms was also not improper. The parties stipulated that defendant was ineligible to possess a firearm, and it followed that he would be unable to purchase a handgun from a retailer. Sergeant Carlotto's testimony about his experience with the use of straw purchasers and his opinion that the video from On Target Firearms involved a straw purchase were helpful to the jury's understanding of the events depicted on that video as well as testimony and evidence showing that defendant's girlfriend, Summer Bowman, purchased the handgun at issue. Consequently, that testimony was also proper under MRE 701.

On cross-examination, Sergeant Carlotto admitted that the reason he did not order the examination of the handgun for fingerprints was because he believed he had defendant "dead to rights" such that nothing else was required. And on recross-examination defense counsel asked Sergeant Carlotto whether he told Officer Bell that the gun must be in the car. Sergeant Carlotto answered that he did tell Officer Bell that he thought the gun must be in the car because to him "it was painfully obvious" that defendant had a firearm and it was "extremely logical" that it would be in the car because that was the only other place that defendant had been. For the reasons already discussed, Sergeant Carlotto's statement of the inferences that he then drew from the evidence was relevant and admissible to explain his actions on the day at issue. MRE 701. While we agree that Sergeant Carlotto's testimony that the driver of a motor vehicle was legally responsible for everything found in the car was incompetent and irrelevant as a statement of the law, to the extent that his understanding of the law—mistaken or not—he could inform the jury of his view as the explanation for his acts or omissions. MRE 701.

Additionally, the trial court cured whatever confusion Sergeant Carlotto's statement might have caused by instructing the jury to disregard his statement of the law. The court cautioned the jury that, "to the extent that any witnesses may have provided you some information about their version of what the law is[,] at the end of this case[,] I will provide you final instructions about the law [and] as noted earlier the law is as I give it to you, not as any witnesses as it relates to possession or any other matters not as they may have opined[.]" The court further admonished that the jury was "to follow my instructions on the law." It then repeated that the jury was required to follow its instructions when the jury asked the court during deliberations whether it was true that "the operator of the vehicle" was "responsible for everything in the car?" Finally, the trial court properly instructed the jury, in relevant part, that it had to find that defendant knowingly carried the handgun to be found guilty of carrying a concealed weapon and had to find that he carried or possessed the handgun to find him guilty of the remaining offenses. These instructions cured any prejudice occasioned by Sergeant Carlotto's explanation that he did not order the collection of additional evidence because the law made defendant responsible for anything found in the car. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

The trial court did not plainly err by allowing Sergeant Carlotto to testify about the inferences that he contemporaneously drew from the video evidence on the day at issue. It also did not plainly err when it elected to instruct the jury to disregard statements of the law made by the witnesses in response to Sergeant Carlotto's statement that the operator of a car is responsible for anything found in the car. *Carines*, 460 Mich at 763.

## III. JUROR MISCONDUCT

### A. STANDARD OF REVIEW

Defendant next argues that he was deprived of a fair trial by a juror's failure to disclose that she had had a contentious relationship with him when he was in middle school. Generally, a defendant must raise claims of error involving the empaneling of the jury in the trial court in order to preserve the claim for appellate review. *People v Eccles*, 260 Mich App 379, 385; 677 NW2d 76 (2004). In this case, defense counsel did not question the juror at issue after she disclosed that she had had a teacher-student relationship with defendant, and she did not move to exclude her for cause or otherwise challenge her ability to sit on the jury. Therefore, this claim of error has not been preserved for appellate review. *Id.*

This Court reviews de novo whether the trial court properly applied the law applicable to jury selection. *People v Fletcher*, 260 Mich App 531, 554; 679 NW2d 127 (2004). This Court reviews a trial court's handling of voir dire for an abuse of discretion. *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994) (opinion by MALLET, J.). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 259; 749 NW2d 272 (2008). This Court reviews unpreserved errors for plain error that prejudiced the defendant's trial. *Carines*, 460 Mich at 763.

### B. ANALYSIS

Defendant has the right to be tried by an impartial jury. *People v Rose*, 289 Mich App 499, 529; 808 NW2d 301 (2010). "A juror's failure to disclose information that the juror should have disclosed may warrant a new trial if the failure to disclose denied the defendant an impartial jury." *Id.* In order to warrant a new trial, defendant must show, at the very least, that there was a reasonable doubt about a juror's impartiality. *Id.*

In this case, a juror informed the trial court during voir dire that she was a recently retired teacher and that she knew defendant, Officer Olney, and Clark from teaching. She later explained that defendant was one of her students and that she remembered talking to him many times. The prosecutor asked her whether there was anything about her past experience that would prevent her from "being fair to one side or the other whether that be the defense side or the prosecution," and she replied that she did not "think so." She explained that she was "trying to remember the personality you know of—of um [defendant] and," she stated, "you know it[']s I think pretty balanced I although I might have a little sympathy." When the prosecution asked whether her sympathy for him might prevent her from finding him guilty, the juror stated that she was "fair" and "would have to go with the evidence." She agreed that she would make her decision on the basis of the evidence and not out of sympathy.

-5-

On appeal, defendant maintains that the juror failed to disclose that she had had a contentious relationship with him that might have affected her impartiality. He does not, however, present any evidence from which it could be inferred that she had had a contentious relationship with him. Presumably, he would have known about any difficulties that they might have had during his time as a student and he could have raised those issues with defense counsel who then could have further explored their relationship through examination. Defendant did not raise the matter during voir dire, and the juror cannot be faulted for his failure to do so. *People v Johnson*, 245 Mich App 243, 253; 631 NW2d 1 (2001) (stating that a potential juror cannot be faulted for defense counsel's failure to ask more specific questions). Moreover, the juror was presumed impartial, and her statement that she would be fair and make a decision on the basis of the evidence was sufficient to protect defendant's right to a fair trial. *Id.* at 256.

Defendant has not established a reasonable doubt about the juror's impartiality. *Rose*, 289 Mich App at 529. Accordingly, he has not shown plain error. *Carines*, 460 Mich at 763.

## IV. ENLARGED AND SLOWED VIDEO

### A. STANDARD OF REVIEW

Defendant also argues that the trial court abused its discretion when it allowed the prosecution to introduce an excerpt of the video made from the pole camera, which had been enlarged and slowed. This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *McFarlane*, 325 Mich App at 517. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Unger*, 278 Mich App at 259. This Court reviews de novo constitutional questions and whether the trial court properly applied the law applicable to the admission of evidence. *McFarlane*, 325 Mich App at 517.

### B. ANALYSIS

Defendant argues that the trial court should not have admitted the altered version of the video because it never found that the copy was an accurate reproduction of the original and, in any event, the jury did not need the assistance of the enlarged and slowed video because the original was clear enough for the jury's review. The rules of evidence define a duplicate of an electronic recording to be a "counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques, which accurately reproduces the original." MRE 1001(4). A duplicate is admissible to the same extent as an original unless there is a "genuine question . . . as to the authenticity of the original" or where, under the circumstances, it would be unfair to admit the duplicate in lieu of the original. MRE 1003. Because a duplicate is admissible to the same extent as the original, its admission is not precluded under MRE 1002.

In this case, the original video recording was admitted at trial and available to the jury. Moreover, there was no dispute about the authenticity of the original and the duplicate shown to the jury as People's Exhibit (PEX) 2 was not offered in lieu of the original. Rather, the prosecutor offered the duplicate to focus in on the moment when defendant returned to the Ford Taurus, retrieved an object, tucked the object into his waistband, and then walked back to Clark and Harris.

Sergeant Carlotto testified that the prosecutor was "correct" when the prosecutor asked whether PEX 2 was "the same as the pole cam video um nothings been done to it except it's just been enlarged and slowed down." And a review of the videos shows that PEX 2 was in fact a zoomed and slowed duplicate of the original video.

Contrary to defendant's contention on appeal, the trial court did find that the second video was an accurate reproduction of the original. The court viewed the video before it was shown to the jury and stated that, from its review of the "short segment," it appeared that the video was a "duplicate" as defined under MRE 1001(4): "Here it simply is an enlarged version of the original event designed I assume to assist the jury in their review of the facts of this case so the objections overruled." As a duplicate, PEX 2 was admissible to the same extent as the original. MRE 1003. Moreover, the mere fact that the jury had the original did not preclude the prosecution from presenting the enlarged and slowed version.

Here, the enlarged version cropped out the distracting background material and focused the viewer's attention on defendant for the few seconds after he went back to the Ford Taurus to the moment that he returned to the company of Clark and Harris. Because it was enlarged from the original, the second video had more pixilation, but it still more clearly focused on defendant and gave the jury an opportunity to better examine the video evidence of the object tucked into defendant's waistline. It also gave the jury a clearer view of defendant's demeanor and his gestures, which tended to permit an inference that he was showing the object to Clark and Harris. As such, the duplicate was relevant and admissible, MRE 401; MRE 402, as a duplicate of the original, MRE 1001(4); MRE 1003.

The trial court did not abuse its discretion when it admitted the enlarged and slowed video segment made from the original. *McFarlane*, 325 Mich App at 517.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

Defendant also argues that his trial counsel did not provide effective assistance. Because the trial court did not hold an evidentiary hearing on this claim of error, there are no factual findings to which this Court must defer, and this Court's review is for mistakes that are apparent on the record alone. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), remanded on other grounds 493 Mich 864 (2012). This Court reviews de novo whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and prejudiced his trial. *Id.* at 19-20.

### B. ANALYSIS

In order to establish ineffective assistance of counsel, defendant must identify an act or omission by defense counsel that fell below an objective standard of reasonableness under prevailing professional norms and must show that there is a reasonable probability that, but for the act or omission, the outcome of his trial would have been different. *Gioglio*, 296 Mich App at 22-23. There is a strong presumption that defense counsel acted within the wide range of reasonable professional assistance. *Id.* at 22. Indeed, this Court will conclude that defense counsel's acts or

omissions fell within the range of reasonable professional assistance if this Court can conceive of a legitimate strategic reason for the act or omission. *Id.* at 22-23.

Defendant complains on appeal that defense counsel offered no evidence at his trial and notes that he did not testify. He further complains that there was no indication that he knowingly waived his right to testify or even knew that he had the right to testify. He does not, however, identify any evidence that he believes should have been presented at trial, and he does not offer any indication as to his understanding concerning the decision whether he should testify. He also does not state that he was ready and willing to testify, and he does not indicate what the content of his testimony would have been had he testified. By failing to offer any meaningful discussion of the proposed evidence about which he now complains, defendant not only failed to establish the factual predicate for his claim, *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), he abandoned it on appeal, *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006); see also *People v Simmons*, 140 Mich App 681, 685-686; 364 NW2d 783 (1985) (rejecting a claim of ineffective assistance of counsel premised on defense counsel's purported failure to advise the defendant about his right to testify because the defendant failed to allege that he was in fact unaware of the right, failed to allege that he would have testified, and failed to state what his testimony would have been).

In any event, the record supports that defense counsel did discuss with defendant whether or not he would testify. After the prosecution indicated that the next witness was his last witness, the trial court inquired whether defense counsel intended to call any witnesses. She responded that she did not know whether defendant was going to testify, but she stated that she had no other witnesses. After a recess and the defense's motion for a directed verdict, defense counsel informed the court and jury that the defense did not intend to call any witnesses. The defense then rested. The fact that there was a break before defense counsel indicated that she would not be putting on any witnesses further supports that defendant and defense counsel resolved the matter in favor of him not testifying during the break. On this record, there is no indication that would support defendant's contention that defense counsel somehow provided ineffective assistance with regard to his decision whether to testify. There is no obligation to create a record as to whether a defendant has made a knowing and intelligent waiver of the right to testify. *People v Harris*, 190 Mich App 652, 661-662; 476 NW2d 767 (1991).

Defendant also faults defense counsel for not objecting to Sergeant Carlotto's testimony on the ground that his testimony invaded the province of the jury and for failing to request that his testimony be stricken or, at the very least, to ask for a curative instruction. The trial court did give a cautionary instruction addressing Sergeant Carlotto's statement of his opinion concerning the law of possession after the lawyers held a brief bench conference. As already discussed, Sergeant Carlotto's testimony other than his statement about the law, was admissible and did not invade the province of the jury. As such, defense counsel cannot be faulted for failing to raise such a challenge or seek relief related to that testimony. *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.").

Additionally, defense counsel had a legitimate strategic reason for handling Sergeant Carlotto's testimony as she did. It was defense counsel's theory of the case that the officers rushed to judgment and did not adequately investigate whether defendant in fact had a gun on him during

the events depicted by the video evidence. Indeed, she cross-examined Sergeant Carlotto and got him to admit that he made the decision not to request additional evidence and that he did so because he felt that he had defendant "dead to rights" and so nothing more needed to be done. She also had him clarify that he was not at the scene, but that he was making decisions remotely. This line of questioning was consistent with defense counsel's theory of the case and that her handling of Sergeant Carlotto's testimony was a matter of trial strategy. As such, defendant has not overcome the presumption that defense counsel acted within the range of reasonable conduct in handling his testimony. *McFarlane*, 325 Mich App at 528 (stating that it cannot be said that the failure to object fell below an objective standard of reasonableness under prevailing professional norms where there is a plausible strategic reason for the decision).

Defendant has not established that defense counsel provided ineffective assistance.

## VI. SUFFICIENCY AND WEIGHT OF THE EVIDENCE

### A. STANDARDS OF REVIEW

Defendant also challenges the sufficiency and weight of the evidence that he carried a concealed weapon, and he argues that the trial court should have granted his motion for a directed verdict on the ground that there was insufficient evidence to support the prosecution's contention that he carried or possessed a firearm.

This Court reviews de novo whether a defendant established grounds for a directed verdict. *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). "In challenges to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). The same standard applies to a motion for directed verdict except that this Court considers only the evidence presented up to the time of the motion. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001). This Court reviews a claim that the verdict was contrary to the great weight of the evidence by determining whether the evidence so preponderates against the verdict that it would be a serious miscarriage of justice to allow the conviction to stand. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998).

### B. ANALYSIS

The Legislature prohibited a person from carrying a "pistol concealed on or about his or her person . . . without a license to carry the pistol . . . ." MCL 750.227(2). To prove that defendant committed this crime, the prosecution had to present evidence that defendant knowingly carried a concealed weapon on his person or in a car. *People v Hernandez-Garcia*, 266 Mich App 416, 418; 701 NW2d 191 (2005), aff'd in part and vacated in part on other grounds 477 Mich 1039 (2007); MCL 750.227(2). The prosecutor does not have to prove that the pistol was totally concealed; a pistol is concealed for purposes of CCW when it is not discernable by the ordinary observation of persons casually observing the person carrying it. *Hernandez-Garcia*, 266 Mich App at 421-422.

When evaluating a challenge to the sufficiency of the evidence, this Court must consider the inferences that can be fairly drawn from the evidence in the light most favorable to the

prosecution. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Further, "it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). In such cases, it is for the fact-finder alone to "determine what inferences may be fairly drawn from the evidence and determine the weight to be accorded those inferences." *Id.*

In this case, there was video evidence that showed defendant returning to his car and retrieving an object. While at the door to his car, it appeared that defendant tucked the object into his waistband. In the moments depicted before he appeared to tuck the object into his waistband, the video showed that his shirt fell over his waist. Afterward, his shirt appeared to be caught on the object and no longer fell over his waist. The video showed defendant walk to the vicinity of Clark and Harris. While walking, his unzipped hoodie moved from side to side and revealed what appeared to be a pistol tucked into his waistband just to his right side. The object was at times in the video concealed by defendant's hoodie. However, to the extent that there could be any doubt about whether the object was concealed from casual observation during those moments, the video showed that defendant zipped up his hoodie, which then fully concealed the object. Testimony and evidence also established that officers found a handgun in the car driven by defendant after their arrival, which handgun was consistent with the object depicted in the video.

Consequently, the prosecution presented sufficient evidence from which a reasonable jury could conclude that defendant knowingly carried a concealed pistol. *Hernandez-Garcia*, 266 Mich App at 418. For the same reason, the trial court did not plainly err to the extent that it failed to sua sponte conclude that the jury's finding that defendant carried a concealed pistol was contrary to the great weight of the evidence.[1]

Finally, defendant argues that the trial court erred when it denied his motion for a directed verdict on the ground that the prosecution failed to present sufficient evidence to establish that the

---

[1] On appeal, defendant does not discuss the evidence that showed that he had the pistol at issue tucked into his waist and that it was ultimately concealed by his zipped hoodie. Instead, he cites Sergeant Carlotto's testimony that it was obvious to him that defendant had a gun. He concludes on that basis that the object, even if a handgun, was plainly not concealed. The evidence that the handgun was visible at some points does not preclude a finding that it was concealed at a different time. See, e.g., *People v Iacopelli*, 30 Mich App 105, 106-107; 186 NW2d 38 (1971) (stating that the trial court properly submitted the question whether the weapon was concealed to the jury because there was evidence that the defendant removed the weapon from plain sight and placed it in his coat pocket). The mere existence of potential flaws in the evidence also does not permit a trial court to set aside that evidence as contrary to the great weight of the evidence; conflicts in the evidence or questions as to the credibility of witnesses are not sufficient grounds for granting a new trial unless the testimony or evidence contradicts undisputable physical facts or laws or is so patently incredible or inherently implausible that no reasonable juror could believe it. *Lemmon*, 456 Mich 643-644.

object in his waistband was the handgun later found in the car that he drove. Contrary to defendant's contention, there was ample evidence to support the jury's verdict.

In order to establish the elements of being a felon-in-possession of a firearm and felony-firearm, the prosecution had, in relevant part, to present evidence that defendant carried or possessed a firearm. MCL 750.224f; MCL 750.227b. Similarly, to establish that defendant committed CCW, the prosecution had to prove in relevant part that defendant knowingly carried a pistol concealed on his person. MCL 750.227(2). The prosecution could establish each of these elements by presenting evidence that defendant carried a handgun concealed on his person.

At trial, the prosecutor presented evidence that defendant went to a store two days before the day at issue and browsed firearms. He spoke to a store clerk about a .380 caliber Cobra semiautomatic handgun. After speaking with the store clerk, defendant left the store and Bowman came inside and immediately purchased a .380 caliber Cobra in her own name. Although the evidence showed that defendant asked about the firearm ostensibly on behalf of his girlfriend, a reasonable jury could find from the evidence that defendant had been convicted of a specified felony. Further, he was ineligible to purchase a firearm, that he knew he could not purchase the handgun in his own name, and that he got Bowman to purchase the .380 caliber Cobra for him. *Hardiman*, 466 Mich at 428. The jury also heard testimony and saw evidence that, shortly after the police officers arrived on the scene, they discovered the same .380 caliber Cobra in the car that defendant had been driving just moments earlier. The jury also saw video evidence that appeared to show defendant retrieving an object from that same car just minutes earlier, tucking it into his waistband, and then gesturing to it in front of Clark and Harris. The video itself strongly suggested that the object that defendant tucked into his waistband was a black semiautomatic handgun. Taken together, the evidence established that defendant tucked the .380 caliber Cobra into his waist during the events at issue. Because there was evidence from which a reasonable jury could conclude that defendant carried the .380 Cobra tucked into his pants and then fully concealed it by zipping up his hoodie, the trial court did not err when it denied defendant's motion for a directed verdict. *Iacopelli*, 30 Mich App at 106-107 (stating that whether the weapon was concealed from ordinary observation is normally a matter for the trier of fact).

The trial court did not err when it denied defendant's motion for a directed verdict, *Riley*, 468 Mich at 139-140 (stating that the test for a directed verdict is whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt), and the prosecutor presented sufficient evidence to establish the disputed elements and the evidence in support was not contrary to the great weight of the evidence.

## VII. MOTION FOR A NEW TRIAL

### A. STANDARD OF REVIEW

Defendant next argues that the trial court abused its discretion when it denied his motion for a new trial. This Court reviews a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable outcomes. *Id.*

## B. ANALYSIS

On appeal, defendant argues that the trial court erred when it denied his motion for a new trial, but he does not address the trial court's actual reason for denying the motion. He also does not substantively address the grounds for a new trial that he originally asserted before the trial court. By failing to offer any meaningful analysis of the trial court's actual decision and the merits of his underlying motion, defendant has abandoned this claim of error on appeal. *Martin*, 271 Mich App at 315. In any event, the claim is meritless.

When considering defendant's motion, the trial court elected not to decide the issue on the merits. The trial court was concerned that defendant had not filed a copy of the motion with this Court as required by MCR 7.208(B)(2), but more importantly it worried that defendant's appointed appellate lawyer should have the opportunity to examine the motion and make additions or changes as appropriate from an appellate standpoint. For those reasons, the trial court chose to dismiss the motion without prejudice to give defendant's appellate lawyer the opportunity to pursue his own postjudgment strategy.

The trial court has the inherent authority to manage its docket to achieve the orderly and expeditious disposition of cases. *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006); see also MCR 1.105. Upon review of the record, the trial court's concern that defendant might be better served if appellate counsel reviewed trial counsel's motion was well-founded. Trial counsel did not support the motion with an affidavit or any other documentation. Moreover, the claims involved some issues that appellate counsel raised in this Court: a claim of juror misconduct, a claim that it was error to admit the enlarged and slowed video, and a claim of insufficient evidence. Trial counsel also did not ask the trial court to hold an evidentiary hearing to develop the record. Under the circumstances, the trial court's decision to dismiss the motion without prejudice to give appellate counsel the opportunity to file a better supported motion or incorporate the issues into an appeal fell within the range of reasonable outcomes. *Russell*, 297 Mich App at 715.

## VIII. CLERICAL ERROR ON THE JUDGMENT OF SENTENCE

As the prosecution concedes on appeal, defendant has identified a clerical error on the judgment of sentence. Defendant's conviction of felony-firearm was predicated on being in possession of a firearm while ineligible to do so under MCL 750.224f. As such, the trial court was required to order him to serve his sentence for felony-firearm consecutive to and preceding his sentence for being a felon-in-possession, see MCL 750.227b(3), which it did. However, the judgment of sentence provided that defendant must serve his sentence for being a felon-in-possession "consecutive and preceding" his sentence for felony-firearm, and required him to serve his sentence for felony-firearm "consecutive and preceding" his sentence for being a felon-in-possession. Being logically impossible, it is evident that the judgment contains a clerical error. Accordingly, we remand this case to the trial court for the ministerial task of amending the judgment of sentence to delete the provision requiring defendant to serve his sentence for being a felon-in-possession consecutive to and preceding his sentence for felony-firearm. See MCR 7.216(A)(1).

Affirmed, but remanded for correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly