*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEFFERY BERNARD MORRIS,

Defendant-Appellant.

UNPUBLISHED
March 19, 2025
1:09 PM

No. 363853
Oakland Circuit Court
LC No. 2020-275176-FC

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

A jury convicted defendant, Jeffery Bernard Morris, of first-degree premeditated murder, MCL 750.316(1)(a), and first-degree felony murder, MCL 750.316(1)(b),[1] for immolating a single victim.[2] The trial court sentenced him to life imprisonment without the possibility of parole. Morris appeals as of right, arguing that his right to a speedy trial was violated. He also argues that his trial counsel was ineffective for failing to object to identification testimony, opinion testimony about shoplifting tactics, and speedy-trial issues. Morris also argues that the cumulative effect of the errors entitles him to a new trial. We disagree and affirm.

## I. BACKGROUND

Morris murdered SZ on July 12, 2020, by setting her on fire following a brutal sexual act. Morris, at least according to his internet searches, had an interest in brachiovaginal penetration

---

[1] The underlying felony was second-degree criminal sexual conduct.

[2] The jury convicted Morris on both theories. See *People v Bigelow*, 229 Mich App 218, 222; 581 NW2d 744 (1998) (a judgment of sentence for a single murder is for a single "count of first-degree murder supported by two theories: premeditated murder and felony murder.")

(commonly, "fisting").[3] He first contacted SZ on July 10, 2020. Before the murder, Morris purchased a gasoline can and gasoline from a gas station he frequented. SZ and Morris arranged to meet later in the evening on July 12, 2020, not long after SZ returned to her mother's home in Waterford, Michigan, from a short trip with a friend. At trial, the prosecution presented evidence that Morris burned her alive with her wrists bound with zip ties after fisting her to the point of rupturing her perineum.

Through witness testimony, surveillance footage, cell tower evidence, and evidence extracted from Morris's cell phone, the prosecution presented the jury with a detailed timeline of Morris's conduct the day of the murder. Having purchased the gas can a day earlier, on the afternoon of July 12, 2020, Morris returned to the same gas station and bought $20 of gas with a stored value card.

Around 8:50 p.m., Morris picked up SZ from her mother's house. Both of their cell phones connected to cell sites in that area. Around 9:10 p.m., Morris went to a friend's house to borrow money for a motel room. The friend testified that he loaned Morris $60. He saw a woman in Morris's car. Cell site evidence established that Morris and SZ's cell phones connected to towers in the area of the friend's residence between 9:10 p.m. and 9:14 p.m. From about 9:22 p.m. to 9:37 p.m., the records were consistent with Morris's and SZ's cell phones traveling to the Sherwood Motel. Morris rented a motel room for that night at 9:26 p.m., paying in cash. The husband and wife innkeepers testified at trial and identified Morris.

At approximately 11:41 p.m., cell site evidence tracked Morris traveling to a Meijer store in Waterford. Keith Hawkes, the manager of the security department for that Meijer store, compiled surveillance recordings from the store's security cameras that he believed showed that Morris shoplifted zip ties and petroleum jelly from the store before leaving at about 11:51 p.m. Cell site records then tracked Morris traveling back to the motel. In the early morning hours of July 13, 2020, cell site records and residential surveillance camera recordings showed that Morris drove to Pontiac Lake Recreation Area in White Lake Township, Michigan, where SZ's burned body was found. SZ's cell site records show her two cell phones pinging at the motel, then the park, then not all. Her cell phones were never recovered.

At 7:45 a.m. on July 13, 2020, two men driving by a parking lot in the park noticed a burned body and contacted the police. The body was identified as SZ. While SZ died as a result of being set on fire while still alive, she also suffered blunt force injuries to the perineum while she was still alive. Her legs were found in a splayed position and there was also bruising of her anus. There was evidence that both of her wrists had been bound with zip ties.

DNA testing confirmed that Morris's DNA was consistent with male DNA recovered from SZ's vaginal wall. Morris, therefore, could not be eliminated as the source of the male DNA.

---

[3] The prosecutor described, during his opening statement, that "fisting" involves the act of inserting a fist into another person's orifice. For females, that can involve brachioproctic (anal) or brachiovaginal (vaginal) penetration.

From SZ's cell phone records, law enforcement learned that Morris's cell phone connected with SZ's for two phone calls. He was arrested in late July following a traffic stop.

The prosecution originally charged Morris with first-degree premeditated murder. The district court bound over Morris for trial on that charge in September 2020. The prosecutor then added a charge for felony murder. In March 2021, Morris was bound over for trial on the charge of felony murder, with second-degree criminal sexual conduct as the underlying felony. He was tried before a jury in October 2022.

The prosecution's theory was that Morris had violent, brutal, pornographic fantasies involving "fisting" women, particularly Asian women, and that he acted out his fantasy in a brutal sexual and physical assault of SZ. Morris then set fire to SZ in Pontiac Lake Recreation Area. To that end, the prosecution offered a variety of testimonial, forensic, and physical evidence.

Critical to this appeal, the prosecution offered testimony from Hawkes, the security manager for the Meijer store where Morris was believed to have shoplifted items used in the death and sexual assault of SZ, including zip ties and petroleum jelly. Hawkes described his professional background and responsibilities. He was the manager of the Asset Protection Team, running the store's security department and handling investigations related to the store's stock. Part of his duties involved investigating shoplifters or retail fraud. He described his training to identify shoplifters by common tactics and described his observations of Morris's recorded conduct in relation to those common tactics.

At trial, Hawkes was asked to use a specific photograph of a white male to track a suspect who was in the store and might have shoplifted those items. Hawkes compiled a PowerPoint presentation for the jury, showing how the suspect worked his way through the store and concealed items before leaving the store without paying for them.

The prosecution did not seek to qualify Hawkes as an expert witness; rather, it elicited lay opinion testimony combined with factual testimony. Hawkes testified that after Morris walked into the aisle containing electrical products, he saw Morris carrying an item which Hawkes believed was a package of zip ties. Hawkes also described Morris reaching for a jar of petroleum jelly and holding it in his left hand. Morris then went into the shoe department and made a motion with his left hand toward the pocket on the left side of his cargo shorts. On the basis of his training and experience, Hawkes described that motion as typical of someone who conceals an item in a pocket.

Hawkes also saw Morris go into the store's restroom area, which he explained is where people take merchandise to conceal it before leaving the store because there are no cameras in that area of the store. After Morris left the store, he opened up his car trunk, and Hawkes explained that a white flash observed on the recording was consistent with the movement of cellophane wrap. The zip ties were packaged in cellophane.

During his testimony, Hawkes mainly referred to the individual in the surveillance footage as the "subject" or the "suspect." But at one point he referred to the individual identified in the video and related PowerPoint as the "defendant."

In addition to Hawkes's testimony, the prosecution presented the jury with substantial circumstantial evidence. As stated, this included cell site location data for Morris and SZ that established the location of their cell phones the night of the murder. There was witness testimony from Morris's friend who loaned him cash for the hotel room (and saw a woman in his car), the gas station attendant who sold him the gas can, and the innkeepers who rented him the motel room. The prosecution presented DNA evidence that Morris could not be excluded as a contributor to the male DNA found in SZ's vaginal canal.

Finally, the prosecution presented the results of a search executed on Morris's cell phone. The records showed a call between SZ and Morris on July 10, 2020. Morris saved SZ's contact information in his cell phone under her first name. He deleted the contact entry on July 14, 2020. There was also evidence that he searched the internet for videos specifically depicting brutal fisting in the woods the same night SZ was murdered and left in a park. He also conducted numerous internet searches for sadomasochistic material depicting women of SZ's race.

At trial, the defense agreed that SZ died a terrible death and that the only issue was who caused her death. The defense contended that there was reasonable doubt that Morris was responsible for her death.

The jury ultimately convicted Morris on both theories, i.e., first-degree premeditated murder and felony murder. In November 2022, the trial court sentenced Morris to a mandatory term of life imprisonment without the possibility of parole. Morris filed a postconviction motion, arguing a speedy-trial issue. He also moved to remand before this Court. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Morris argues that he was deprived of his right to effective assistance of counsel because trial counsel failed to object to certain identification testimony and opinion testimony on shoplifting tactics. But Morris cannot establish a resulting prejudice. And in the case of the shoplifting testimony, he cannot establish that trial counsel was deficient. So, we disagree.

As stated in *People v Otto*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362161); slip op at 4:

> A claim of ineffective assistance of counsel involves a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review findings of fact, if any, for clear error. *Id.* "We review de novo the constitutional question whether an attorney's ineffective assistance deprived a defendant of his or her Sixth Amendment right to counsel." *People v Fyda*, 288 Mich App 446, 449-450; 793 NW2d 712 (2010). "Where the trial court has not conducted an evidentiary hearing, this Court's review is limited to mistakes apparent on the record." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021) (quotation marks and citation omitted). Issues of statutory interpretation are reviewed de novo. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016).

"Both the Michigan and United States Constitutions guarantee criminal defendants the right to be represented by counsel." *Otto*, ___ Mich App at ___; slip op at 4, citing Const 1963, art 1, § 20;

-4-

US Const, Am VI. "The constitutional right to counsel is not merely the right to have a lawyer stand or sit nearby; rather, a criminal defendant has the right to the effective assistance of counsel." *Otto*, ___ Mich App at ___; slip op at 4.

An ineffective-assistance-of-counsel claim has two parts: (1) deficiency and (2) prejudice. *Fyda*, 288 Mich App at 450. See also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *Fyda*, 288 Mich App at 450. Regarding the first prong, deficiency, "[t]rial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *Hughes*, 339 Mich App at 105. "When reviewing defense counsel's performance, the reviewing court must first objectively determine whether, in light of all the circumstances, the identified acts or omissions were outside of the wide range of professionally competent assistance." *Id*. at 105-106 (quotation marks and citation omitted). The second prong, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022) (quotation marks and citation omitted). "Reasonable probability means a probability sufficient to undermine confidence in the outcome." *Id*. at 637 (quotation marks and citation omitted).

## A. IDENTIFICATION TESTIMONY

Morris's ineffective-assistance-of-counsel claim regarding Hawkes's identification testimony fails because he cannot establish prejudice. Morris argues that Hawkes's testimony encroached on the jury's role because he identified the suspect in the recordings as "defendant," i.e., Morris. He argues that his trial counsel was ineffective for not objecting to Hawkes's testimony on this basis.[4] We disagree.

Regarding the first prong, we assume without deciding that trial counsel's failure to object was deficient.[5] Witnesses are not permitted to tell the jury how to decide a case. *People v*

---

[4] Although Morris did not move for a new trial or an evidentiary hearing on the issue of ineffective assistance of counsel before the trial court, he preserved this issue by moving in this Court to remand this matter to the trial court for an evidentiary hearing. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

[5] At the outset, we acknowledge that there may be sound strategic reasons for counsel's decision not to object to this aspect of Hawkes's testimony. There is a strong presumption that counsel's actions are sound trial strategy. *People v Ackley*, 497 Mich App 381, 388; 870 NW2d 858 (2015). "This Court does not second-guess counsel on matters of trial strategy." *People v Traver*, 328 Mich App 418, 422; 937 NW2d 398 (2019). Strategic decisions are reviewed from the perspective of counsel at trial, not with hindsight. *Strickland*, 466 US at 689. It was apparent that Morris was the person photographed going into the Meijer store late on July 12, 2020, which was confirmed by the car driven there and his cell phone records, which placed him near the store at that time. Defense counsel agreed in his closing argument that it was Morris in the store. Defense counsel may have decided not to raise an objection because it was futile and might have impacted his

*Drossart*, 99 Mich App 66, 79; 297 NW2d 863 (1980). Allowing a witness to give his own opinion or interpretation of the facts invades the province of the jury and amounts to error when a jury is capable of reaching a conclusion on the facts. *Id*. at 80. However, one exception to this rule is when an expert witness offers opinion testimony on a subject that is largely unfamiliar to the jury. *Id*. Nonetheless, if an expert's opinion is offered on a matter that is equally within the scope of a juror's common knowledge, the admission of opinion testimony on the ultimate issue is error. *Id*.

Applying these principles in the context of opinion testimony that identifies individuals in surveillance video, we have held that a witness may testify that individuals depicted in surveillance footage are the same individuals identified in other images. *People v Fomby*, 300 Mich App 46, 51-52; 831 NW2d 887 (2013) (holding that a police officer's testimony was properly admitted as lay opinion testimony under MRE 701 and did not invade the province of the jury where the officer did not identify the defendant in the surveillance video or still images, but rather, testified linking the individuals depicted in the surveillance video as being the same individuals depicted in the still photographs). But a witness may not identify the person in a video as the defendant, a question that is squarely within the jury's province, and on which they are equally equipped to answer. *People v Perkins*, 314 Mich App 140, 145, 160; 885 NW2d 900 (2016), superseded in part on other grounds by *People v Hyatt*, 316 Mich App 368; 891 NW2d 549 (2016) (holding that trial court abused its discretion when it allowed a police officer to identify one of the defendants in a surveillance recording).

Here, Hawkes arguably identified Morris in the surveillance footage, and that would be objectionable. During his testimony, Hawkes referred to the person he tracked through the surveillance recordings as either the "suspect" or the "subject." In one instance Hawkes identified the person in the images as "defendant":

> *Q*. [The prosecutor] Okay. Turning to People's exhibit 59, what is the jury seeing here?
>
> *A*. So, again, this would be our cen-, central parking lot camera at 11:42:01 and it shows a, the suspect exiting the driver's side of the car.
>
> *Q*. Okay. When you say suspect, who is that?
>
> *A*. That would be the defendant.

The prosecutor referred to "defendant" in his questioning multiple times, but this instance is the only time Hawkes referred to the suspect as "defendant." This was objectionable because the prosecutor essentially asked Hawkes to identify Morris in the surveillance images when the jury could have made that determination itself. See *id*. at 161-162. Furthermore, the point of having

_____

credibility with the jury. Because defense counsel later attacked Hawkes's testimony in closing arguments on other grounds, counsel may have made a reasonable strategic decision to focus on other issues, in contrast to challenging whether it was Morris in the images. If this were a reasonable strategic decision, it would not amount to ineffective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

Hawkes testify was to explain to the jury how the surveillance cameras worked together to show what may have occurred while a suspect was in the store and how he may have stolen items used in this murder. Accordingly, it appears that defense counsel should have made an objection because this question and response invaded the jury's role to decide if it was Morris on the surveillance recordings. We assume that this was deficient. See *Perkins*, 314 Mich App 160-162.

But it did not result in prejudice. See *id*. at 162-163 (holding that the error in admitting officer's identification testimony from surveillance footage was not outcome-determinative where there was overwhelming evidence of the defendant's guilt). We cannot conclude that allowing Hawkes to confirm that he believed that it was Morris in the surveillance recordings changed the outcome of this trial. There was overwhelming evidence that Morris was with SZ on the day she died and that he sexually assaulted her. He purchased gas and a gasoline can matching the description of the can that was found with her burned body. The position and condition of SZ's body when it was discovered in the park was also consistent with Morris's numerous searches for pornography related to abusing women in the same manner in which her body was mutilated. And there was extensive cell data tracking his general movements to and from the Meijer store consistent with the time he was depicted moving through the store. Even if defense counsel had objected to Hawkes's identification of the suspect in the recordings as Morris, it is clear that the jury's verdict would not have changed. Compared to the overwhelming evidence of his guilt, Hawkes's identification was comparatively insignificant. Because Morris cannot show a reasonable probability that the outcome of this trial would have been different had his counsel objected, reversal is not appropriate. *Leffew*, 508 Mich at 637.

Even if defense counsel had grounds to object because Hawkes identified Morris in the surveillance recordings, reversal is not required because it is not reasonably probable that counsel's error impacted the outcome of this trial.[6]

## B. OPINION TESTIMONY ON SHOPLIFTING TACTICS

---

[6] To the extent that Morris alternatively requests that this Court remand this matter for an evidentiary hearing on this issue, his request for a remand is denied. Morris has not supported his request for a remand with an offer of proof or an affidavit. Thus, he has not explained how the record could be expanded on this issue. Furthermore, as previously explained, we believe that even if defense counsel should have objected, the outcome of the trial would not have changed. It therefore appears that any further development of the record on this issue would not aid this Court in resolving this issue. Morris's request to remand for an evidentiary hearing on this issue is denied. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995); *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985).

Morris also argues that his trial counsel was ineffective for not objecting to Hawkes's testimony on the ground that Hawkes offered expert testimony related to shoplifting behaviors, but Hawkes was never qualified to testify as an expert witness. This argument also fails.[7]

Morris cannot establish deficiency or prejudice related to Hawkes's testimony on shoplifting tactics. Hawkes was not qualified as an expert witness, so any opinion testimony he offered was as a lay witness only. In *People v Oliver*, 170 Mich App 38; 427 NW2d 898 (1988), mod 433 Mich 862 (1989), this Court explained that not all technically-based testimony is excluded because a witness is not qualified as an expert, but MRE 701[8] permits a witness to give lay opinion testimony. This Court stated:

> At trial the two police officers who examined complainant's car testified, over objection, that no hole was made in the car body, but that the dents in the car's surface could have been made by bullets. Defendant contends that, since the officers were not ballistics experts but were rather no more than lay witnesses, the officers' opinions as to the possible sources of the dents invaded the province of the jury and were not admissible under either MRE 401 or MRE 701. We disagree.

> MRE 701 provides:

>> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

> This Court in *People v Smith*, 152 Mich App 756, 764; 394 NW2d 94 (1986), has interpreted the rule as follows:

>> MRE 701 provides that opinion testimony by a lay witness is admissible if it is rationally based on the perception of the witness and helpful to a clear understanding of his testimony or a fact in issue. The admission of opinion testimony is within the trial court's discretion. *People v George Johnson*, 5 Mich App 257; 146 NW2d 107 (1966).

Morris is correct that Hawkes was allowed to offer opinion testimony. However, we do not believe that his testimony related to shoplifting involved expert testimony offered under MRE

---

[7] Again, Morris preserved this issue by moving in this Court to remand this matter to the trial court for an evidentiary hearing. *Abcumby-Blair*, 335 Mich App at 227; *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

[8] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). We rely on the version of MRE 701 in effect at the time of trial, although the amended version of MRE 701 does not contain any substantive changes.

702,[9] which specifically addresses scientific, technical, or other specialized knowledge. In order for testimony to be admitted under MRE 702, the testimony must be based on reliable principles and methods, which are then applied by the witness to the facts of the case. There is no basis for finding that Hawkes's observations in this matter are dependent on reliable principles or methods, as opposed to his own experience and observations.

Hawkes's observations and opinions about what Morris was doing in the store were properly admitted as lay witness opinion testimony, consistent with this Court's holding in *Oliver*. Like the officers in *Oliver*, Hawkes relied on his experience in retail security to describe for the jury why Morris's actions and movements were consistent with shoplifting items from the store. Again, Hawkes's testimony was not dependent on scientific or technical principles or methods, but was based on his own perceptions, using his experience and training. Morris has not shown that his counsel was ineffective for not objecting to Hawkes's testimony on the ground that he should have been qualified as an expert witness when it is apparent that Hawkes was not offering expert testimony under MRE 702. An objection by defense counsel for this reason would have been futile and, therefore, Morris cannot prove ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

But even if we agreed with Morris that the testimony was objectionable, as previously discussed, any error by counsel did not affect the outcome of this trial, given the overwhelming evidence of Morris's guilt. *Leffew*, 508 Mich at 637. Even without Hawkes identifying Morris's behavior as consistent with shoplifting, the jury would have seen evidence of him in the zip tie aisle and petroleum jelly aisle, circumstantial evidence that Morris stole the zip ties he later used to bind SZ's wrists. This circumstantial evidence would be one small part of the substantial body of evidence of his guilt.[10] Morris was not denied the effective assistance of counsel because his trial attorney did not object to Hawkes's trial testimony on the ground that he was offering expert testimony.

## III. SPEEDY TRIAL

Next, Morris argues that his right to a speedy trial was denied because the time from his arrest to the start of his trial was approximately 26 months. After weighing each of the speedy-trial factors, we disagree.

Morris failed to preserve the underlying speedy-trial issue because he did not make a formal demand before the trial court. *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28

---

[9] The amended version of MRE 702 also does not contain substantive changes.

[10] Again, there is no reason for this Court to remand on this issue for an evidentiary hearing. Morris has not made an offer or proof or supplied an affidavit to establish how he would further develop the record on remand. This Court therefore can determine if counsel was ineffective on the basis of the existing record, which clearly shows that any objection by defense counsel would not have been successful. Morris's request to remand for an evidentiary hearing is denied. *McMillan*, 213 Mich App at 141-142; *Simmons*, 140 Mich App at 685.

(1999).[11] We review unpreserved claims of constitutional errors for plain error affecting substantial rights. *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020). "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) (quotation marks and citation omitted). "An error affects substantial rights when it impacts the outcome of the lower-court proceedings." *Id.* (quotation marks and citation omitted). Even if a defendant satisfies these three requirements, reversal is only warranted if the court determined that the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). This last step, sometimes identified as a fourth prong of plain-error analysis, conceptually overlaps with the third prong. *People v Davis*, 509 Mich 52, 75-76; 983 NW2d 325 (2022).

A defendant's right to a speedy trial is guaranteed by both the federal and state constitutions, US Const, Am VI; Const 1963, art 1, § 20. See also MCL 768.1; MCR 6.004(A). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). A defendant's right to a speedy trial is not violated after a fixed number of days. *Id.* Rather, a court is required to balance the following factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id.* at 261-262. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id.* at 262. When the delay amounts to less than 18 months, the defendant must prove that he has suffered prejudice. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013).

Regarding the first factor—the length of the delay—the parties agree that the length of the delay between Morris's arrest and the start of trial was approximately 26 months, so we presume prejudice. *Williams*, 475 Mich at 262. The burden shifts to the prosecution to show the absence of an injury, and we must assess the other factors.

The second factor—the reason of the delay—does not favor Morris. From August 2020 to November 2021 (about 15 months), the case generally proceeded toward trial, albeit slowed by COVID-19 restrictions and scheduling delays caused by the pandemic. Because the pandemic was the primary reason for any delay during this period when trials were on hold, the prosecution is not responsible for this delay. "Although delays inherent in the court system, e.g., docket congestion, 'are technically attributable to the prosecution, they are given a neutral tint and are

---

[11] Morris raised his right to a speedy trial in a posttrial motion, which the trial court denied. But that was an untimely demand for a speedy trial when the trial court could not have done anything to accelerate this case at that time. Morris also argues that his trial counsel was ineffective for not demanding a speedy trial, which is preserved for appellate review. Morris raised this claim of ineffective assistance of counsel and moved for an evidentiary hearing in his motion to vacate his conviction. The trial court denied that motion. He also preserved his ineffective-assistance-of-counsel argument by moving in this Court to remand this matter to the trial court for an evidentiary hearing. *Abcumby-Blair*, 335 Mich App at 227; *Heft*, 299 Mich App at 80.

assigned only minimal weight in determining whether a defendant was denied a speedy trial.' " *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158 (1997) (citation omitted). However, this Court recently held in *People v Smith*, ___ Mich App ___, ___ ; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 5, that delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of reviewing a speedy-trial argument.

Beginning in November 2021, Morris agreed that his counsel should withdraw and he wished to have new counsel appointed. His new counsel objected to having a trial before September 26, 2022, in order to give him enough time to be prepared, otherwise it was unfair to Morris to move up his trial date. The parties both stipulated to adjourning that trial date to October 3, 2022, which was when the trial actually started. It is important to note that the trial court refused to grant the prosecutor's request for an adjournment because of a conflict with another trial. The trial court recognized that Morris was waiting more than two years in jail for a trial. The delay from November 2021 to September 2022 is attributed to Morris because of his request for new counsel.

The record shows that very little of the delay in this case should be attributed to the prosecution when the pandemic was the primary reason, at the start of the case, why it could not proceed. There was a short delay for the second preliminary examination, but that again occurred while there were scheduling issues and delays from the pandemic. Instead, the primary reason that Morris could not be tried sooner involved his second attorney's request for additional time to prepare for trial, which was affected by the amount of evidence in this case.

The third factor, the defendant's assertion of the right to a speedy trial, also does not favor Morris. It is clear that Morris opted not to assert his right to a speedy trial because, later on, when it is typical for defendants to assert the right, Morris wanted more time so his new attorney could be adequately prepared for trial. Morris first raised this issue in his postconviction motion to vacate his conviction. He argued that he was denied his right to a speedy trial by the delay of 793 days (or 26 months). He further argued that his counsel was ineffective for not timely pursuing the issue and Morris requested that the court hold an evidentiary hearing on the issue. The trial court denied Morris's motion and did not conduct an evidentiary hearing after it thoroughly reviewed the record and determined that the majority of the delays were caused by the COVID-19 pandemic and Morris. Because he did not assert the right until after trial, this weighs against finding a violation.

Regarding the final factors, the record also does not show that the delay prejudiced Morris. With speedy trial, there are two types of prejudice: prejudice to the person and prejudice to the defense. *Williams*, 475 Mich at 264. Prejudice to the "person would take the form of oppressive pretrial incarceration leading to anxiety and concern." *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). However, "[e]very incarceration results in a degree of prejudice to the person." *Id*. Prejudice to the defense is the more serious concern when assessing the harm caused by a delay, and a defendant might be able to withstand a longer delay if the impact is personal only. *Williams*, 475 Mich at 264. Prejudice to the defense might take the form of key witnesses no longer being available. *Collins*, 388 Mich at 694.

Morris certainly suffered personal prejudice while he waited for trial in jail. However, he has not explained how this factor weighed heavily in his favor.

And more importantly, he has not established prejudice to his defense. Regarding this issue, Morris relies on the death of a potential witness, Thomas Nickerson, to argue that he was prejudiced. The trial record contains little information about Nickerson. He was Brienne Wyrick's fiancé in July 2020. At trial, Wyrick testified that Nickerson called Morris for a ride in the early morning hours of July 13, 2020. Nickerson and Wyrick met up with Morris, and he gave them a ride back to their home. Toward the end of her testimony, Wyrick mentioned that her fiancé was "gone," but there was no confirmation that he was deceased at that time.

On appeal, Morris states that he suspects Nickerson had a role in this offense, but does not offer any more information to support that assertion. Nickerson was not named as a witness in this matter. There is no information on when Nickerson died to conclude that the delay in trying this case was a factor in Nickerson not being able to testify. With no offer of proof or affidavit explaining how Nickerson's death impacted his defense, Morris cannot prove that he was prejudiced because of the delay in bringing him to trial. See *Smith*, ___ Mich App at ___; slip op at 6-7 n 8. This factor therefore also does not favor Morris.

Balancing these factors, Morris has not established that he is entitled to appellate relief, particularly under the plain-error standard. Although there was a substantial pretrial delay, on balance, the factors do not demonstrate a clear or obvious deprivation of the right to a speedy trial. *Burkett*, 337 Mich App at 635. Even if Morris could establish a plain error, his claim fails on the prejudice prong of the plain-error rule. Regarding his substantive speedy-trial claim, Morris is not entitled to relief.

By extension, Morris cannot establish that his counsel was ineffective for not moving for a speedy trial. As explained, the initial delay was largely caused by the pandemic, and moving for a speedy trial would have been futile at that time. Moreover, once Morris requested new counsel and his new attorney needed time to prepare, it was inconsistent for Morris to demand a speedy trial. Therefore, there is no merit to his claim of ineffective assistance of counsel.[12]

We conclude that plain error did not occur because of the delay in trying this case, and Morris cannot show that his counsel was ineffective for not moving for a speedy trial.

## IV. CUMULATIVE ERROR

---

[12] Because Morris also did not support his motion for an evidentiary hearing with adequate proof on what evidence he would offer at an evidentiary hearing, the trial court did not err in refusing to conduct an evidentiary hearing on this issue. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007) (an evidentiary hearing on the issue of ineffective assistance of counsel is not warranted if the defendant has not set forth additional facts that require further development of the record to decide if counsel was ineffective). On appeal, Morris again has not supported his request for an evidentiary hearing with an offer of proof or affidavit. Therefore, we again deny his request for an evidentiary hearing. *McMillan*, 213 Mich App at 141-142; *Simmons*, 140 Mich App at 685.

Finally, Morris argues that he is entitled to a new trial on the basis of the cumulative effect of the preceding errors. We disagree.[13] Although a single error in a trial may not necessarily provide a basis for granting a new trial, it is possible that the cumulative effect of multiple minor errors may add up to error requiring reversal. *People v Lowrey*, 342 Mich App 99, 119; 993 NW2d 62 (2022). The test is whether the cumulative effect deprived the defendant of a fair and impartial trial. *People v Taylor*, 185 Mich App 1, 10; 460 NW2d 582 (1990). Each of the errors must be of some consequence, and the cumulative effect must undermine confidence in the reliability of the verdict. *Lowrey*, 342 Mich App at 119. Reversal is not required because of the cumulative impact of multiple errors that individually did not require reversal. Morris has failed to establish that any errors of consequence occurred. Therefore, reversal of his conviction due to cumulative error is not warranted. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

We affirm.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood

---

[13] The prosecution argues that this issue is not preserved because Morris failed to raise it before the trial court. But this issue involves this Court's review of the record and whether multiple errors warrant granting a new trial. Accordingly, we do not believe that there is a requirement that this issue must first be raised before the trial court because it involves this Court's review of the severity of any errors. Nonetheless, Morris preserved this issue by moving to remand in this Court. Although Morris did not move for a new trial or an evidentiary hearing on this issue before the trial court, he preserved this issue by moving in this Court to remand this matter to the trial court for an evidentiary hearing. *Abcumby-Blair*, 335 Mich App at 227; *Heft*, 299 Mich App at 80.